Argued 5 January; decided 13 February, 1899.

## STATE *v.* HARPER.

[ 55 Pac. 1075.]

CRIMINAL LAW—REMARKS OF PROSECUTING ATTORNEY.— Where, on a trial for larceny, a person already convicted of the same theft is introduced by the state, and refuses to testify, it is reversible error for the prosecuting attorney, where there was nothing to show any understanding between the witness and the defendant, to argue to the jury that the guilt of the accused was to be inferred from the refusal of the witness to testify: *State* v. *Hatcher*, 29 Or. 309, applied.

From Multnomah : THOS. A. STEPHENS, Judge.

Lilly Harper was convicted of larceny, and appeals.

REVERSED.

For appellant there was a brief over the name of *Stott, Boise & Stout*, with an oral argument by *Mr. Geo. C. Stout.*

For the state there was a brief over the names of *Cicero M. Idleman*, attorney-general, and *Chas. F. Lord*, former district attorney, with an oral argument by *Mr. Idleman*, and *Mr. Russell E. Sewall*, district attorney.

MR. JUSTICE MOORE delivered the opinion.

The defendant, Lilly Harper, was indicted for the crime of larceny, alleged to have been committed in the taking and carrying away of the personal property of one Thomas C. Scholes, thirteen $10 gold coins, lawful money of the United States, each denominated an "eagle," and all of the value of $130, and also one certificate of deposit issued to the said Scholes by the First National Bank of Portland, Oregon, for the sum of $500, and of that value, and, upon conviction thereof, was sentenced to imprisonment in the penitentiary for the term of eighteen months. From this judgment she appeals, assigning as error, *inter alia*, the alleged misconduct of the deputy prosecuting attorney. The transcript shows that one Charles Underhill was separately indicted for committing the crime with which defendant was charged, and, prior to her trial, was sentenced, upon his plea of guilty, to imprisonment in the penitentiary for a term of years. At defendant's trial, Underhill, being called as a witness for the state, refused to testify, claiming that his evidence might tend to incriminate him, but, inasmuch as he had already been sentenced for committing the crime, the court required him to answer the questions propounded to him, touching defendant's complicity in the commission of the offense. Underhill, however, persisted in his refusal, and was excused, whereupon the deputy prosecuting attorney, in commenting upon the probable testimony of the witness and his refusal to testify, addressed the jury as follows : "It is legitimate argument. There are three persons that know the fact. One person (Scholes) says that he was with him. Another person (this defendant, accused of the crime) thinks, if she can prove she was not with him, it will probably save her; says she was not with him. The third person is the man who, we say, was her confederate in the commission of this crime. He comes

upon the witness stand.   He is sworn as a witness.   He attempts to claim the right of refusing to answer because he will criminate himself.   He could not criminate himself in this case, because he has pleaded guilty to that, and may be punished and convicted.   *   *   * Here is a man that knows, gentleman of the jury, whether or not Lilly Harper accompanied him, with old man Scholes, up to Seventh and Couch streets, and there turned him loose.   Do you suppose that that man, if he could say that which would help Lilly Harper, would close his mouth and decline to answer, when he is asked these questions?   Do you suppose that if that man knows Lilly Harper was not there, that if he knows his answer to that question would save this woman from conviction for this crime, that he would stand here dumb as an oyster and refuse to answer?''   Defendant's counsel, interrupting the argument, said:   '' I wish to move to strike that out,— that last remark,— for the reason that it is not our fault why this man does not testify, and he has no right to argue to the jury any conclusion from that fact, and that we are prejudiced by it.''   The court refusing to instruct the jury to disregard the language used, an exception to the ruling was saved, whereupon the prosecuting officer, addressing his remarks to defendant's counsel, said :   '' If you know why Underhill has not testified, I would like to have you tell this jury. If you attempt to tell this jury that Underhill knows this woman was not there, and that Underhill is going to keep his mouth sealed, and, by keeping his mouth sealed, send this woman to the penitentiary, I tell you, if you are going to attempt to make this jury believe that state of facts, you have a stupendous task upon your hands.   I tell you, gentlemen, that if this man, Underhill, had never heard of this woman, Lilly Harper, do you believe that if he could say that which would

help her, that he could say that which would save her, that if he was not bound by what he had testified before the grand jury,—and he says he did,—that he would come here, and, when called upon to testify as a witness, answer every question that was put to him by absolutely refusing and declining to answer?''

There is nothing in the record showing that any agreement or understanding had been entered into between defendant and Underhill whereby the latter declined to give any testimony at her trial; and, this being so, her counsel contend that the court erred in permitting the state's attorney, over their objection and exception, to argue to the jury that her guilt was to be inferred from Underhill's refusal to testify. In *State* v. *Hatcher*, 29 Or. 309 (44 Pac. 584), it is said : '' The rule is universal that it is error to allow an attorney, in argument, over his adversary's objection, to go outside the evidence and comment on facts assumed to have been proven, and that an exception to the action of the court in permitting it will be reviewed on appeal.'' If it had appeared that the testimony sought to be produced was withheld in pursuance of some agreement entered into between Underhill and the defendant, the argument complained of would probably have been proper, for the statute expressly directs that evidence willfully suppressed creates a disputable presumption that, if such evidence were produced, it would be adverse to the party suppressing it : Hill's Ann. Laws, § 776, subd. 5. In the case at bar, however, it was assumed in the argument, in the absence of any testimony in support thereof, that Underhill had an understanding with defendant by which he refused to testify against her. In *Beach* v. *United States*, 46 Fed. 754, Mr. Justice FIELD, commenting upon the effect of an agreement made under similar circumstances, says : '' We are clear that the court below erred in allowing the

district attorney to argue to the jury that the refusal of Marks to answer certain questions on the ground that his answers might criminate himself, was a circumstance to be considered by them in making up their verdict; that they had a right to consider whether it was not his real object to protect the defendant, and not himself; and that, 'if he was thus particular to protect the defendant,' it must have been from a knowledge that his answers might criminate, not himself, but the defendant. * * * The refusal of the witness to answer the questions, if he thought his answers would criminate himself, was his constitutional right, which the defendant could not control, and no inference should have been permitted to be drawn against the defendant because of the assertion by the witness of this right to protect himself. Marks was called by the government. If he had testified, his testimony might have been in favor of the defendant, though criminating himself. It might have entirely exonerated the defendant. To infer that the very opposite would have been or might have been the effect of his testimony, had it been given, was unwarranted. * * * It would, indeed, be strange doctrine that any one could be found guilty, or even that his guilt could be seriously debated, because another party, called as a witness, who had no relations and was not a conspirator with him, or charged in the same indictment, had refused to testify in order to protect himself. There is neither reason nor authority for any such doctrine." The right to invoke the presumption that testimony willfully withheld, would, if produced, be adverse to the party suppressing it, must rest upon the evidence of some agreement or undertaking entered into between the witness and the party by which the operation of the law is thwarted and the administration of justice defeated; and, without some proof of the unlawful agreement, it cannot make any difference

whether the witness refuses to testify through fear of criminating himself, or for any other reason ; and to hold otherwise is, in effect, to punish a party for the refusal of a witness to obey the order of a court. The judgment is therefore reversed, and the cause remanded for a new trial.

REVERSED,

Decided 31 October; rehearing denied 19 December, 1898.