Argued January 19, affirmed March 5, petition for rehearing denied April 7, 1970. Petition for review denied by Supreme Court May 27, 1970

STATE OF OREGON, *Respondent, v.*
EARL PORTER STEFFES,
*Appellant.*
465 P2d 905

*Ken C. Hadley,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Billy L. Williamson,* Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before SCHWAB, Chief Judge, and FORT and BRANCHFIELD, Judges.

BRANCHFIELD, J.

Defendant was found guilty by a jury of the crime of robbery by putting in fear, not being armed with a dangerous weapon. He was sentenced to 15 years' imprisonment, which sentence was subsequently vacated following a habitual criminal proceeding, and the defendant was sentenced to life imprisonment.

On January 3, 1968, Portland city police received information that a man named Earl, a recent releasee from the Oregon State Penitentiary, was involved in a series of hotel robberies and that the man was staying at a hotel in Portland. When the police checked the list of persons recently released from the Oregon State Penitentiary, they found the name of the defendant. Several pictures, including the defendant's, were shown to the victims of the hotel robberies. These victims picked out the defendant's picture as being that of the robber.

The police went to the hotel where the defendant was staying and inquired as to whether the defendant was registered there. Upon learning that he was, the officers asked the hotel clerk to accompany them to the defendant's room. By that time it was after 10 p.m. When the officers and the desk clerk arrived at the defendant's room, the clerk knocked on the door, then unlocked it and stepped aside. The police officers entered the room, turning on the light. They made a quick search of the room for the defendant but found that he was not there. The desk clerk returned to his duties, two officers stayed in the defendant's room to await his return, and two other officers waited in a room down the hall. A short time later the defendant returned, and when he opened the door he was immediately placed under arrest.

While the officers were in the room looking for the defendant, they observed a toy pistol and a pair of dark glasses lying on top of the dresser. In the closet they found clothes which answered the description of clothing worn by the perpetrator of the hotel robberies. They made no further search at that time, but searched the room more thoroughly after the arrest of the defendant. The officers took possession of the articles which they thought might be related to the robberies and returned with them and the defendant to the police station.

The defendant claims error in the failure of the trial court to suppress the evidence seized at the time of his arrest. Defendant concedes that the police had probable cause for his arrest but claims the search and seizure were illegal because the police did not comply with the Oregon statute requiring them to give notice of their office and announce their purpose.[*] He argues that even though he was not in the room at the time the officers entered, the officers did not know he was absent and therefore they were not excused from complying with the ritual of the "knock and announce" rule. If the arrest was improper, the evidence seized should have been suppressed.

In *People v. Maddox*, 46 Cal 2d 301, 306, 294 P2d 6, 9, cert den 352 US 858, 1 L Ed 2d 65, 77 S Ct 81 (1956), the California court found that strict compliance with the knock and announce rule might not always be required. The court said:

"It must be borne in mind that the primary purpose of the constitutional guarantees is to pre-

[*] ORS 133.320. To make an arrest, as provided in ORS 133.310, the officer may break open any door or window, as provided in ORS 133.290 and 133.300, if, after notice of his office and purpose, he is refused admittance.

vent unreasonable invasions of the security of the people in their persons, houses, papers, and effects, and when an officer has reasonable cause to enter a dwelling to make an arrest and as an incident to that arrest is authorized to make a reasonable search, his entry and his search are not unreasonable. Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844. Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose. [Citations omitted]. Without the benefit of hindsight and ordinarily on the spur of the moment, the officer must decide these questions in the first instance. * * *"

In *Ker v. California*, 374 US 23, 83 S Ct 1623, 10 L Ed 2d 726, 741 (1963), the court said:

"* * * Assuming that the officers' entry by use of a key obtained from the manager is the legal equivalent of a 'breaking,' see Keininghan v. United States, 109 App DC 272, 276, 287 F2d 126, 130 (1960) it has been recognized from the early common law that such breaking is permissible in executing an arrest under certain circumstances. * * *"

Some discussion is advisable concerning the recent case of *Duke v. Superior Court of Los Angeles*, 1 Cal 3d 314, 461 P2d 628 (December 4, 1969). In that case the police received a complaint from the petitioner's wife in the early morning hours that petitioner had slapped and beaten her, that she was afraid of him,

and that he had a newly acquired bottle of red pills in the bathroom. She informed the police that the front door was unlocked, and she gave them permission to enter the house to find out what the pills were and to arrest her husband. The police officers went to petitioner's home, knocked on the front door, and waited about 30 seconds, but heard no response or any other noise. They did not identify themselves as police officers or explain the purpose of their desire for admission, but opened the door and walked into petitioner's bedroom where he was sleeping. He was placed under arrest and the red pills were seized as evidence and found to be a dangerous drug. The California Supreme Court held no exigent circumstances existed to excuse compliance with the statute requiring them to announce the purpose of their visit. The permission by the wife to enter the house was held to be insufficient to excuse the police from complying with that law. However, the court reaffirmed its reliance upon the rule expressed in *People v. Maddox*, supra, and other California cases which permit a police officer to enter a home without first knocking and announcing the purpose of the entry where the police possess information which might lead them reasonably to believe that evidence may be destroyed, a culprit escape or that the police might face increased peril.

██ In this case the police knew that the defendant had just been released from the penitentiary and that the hotel clerks who were robbed had stated that the robber used a gun in each case. Thus they had reasonable grounds to believe that tarrying in the hall outside the defendant's door might expose them to danger. In determining the lawfulness of the entry and the existence of probable cause, the court should concern itself only with what the officers reasonably believed at the

time of their entry. There were exigent circumstances in this case which justified the officers in entering Steffes' room without first announcing their purpose.

The state called a Mr. Sifkowirtz as a witness in the trial. Mr. Sifkowirtz had been sitting in the lobby of a hotel at the time the defendant robbed the clerk of that hotel. As he took the witness stand, and before he had answered any questions, the witness suffered a heart attack. The jury was promptly excused and the witness was taken to a hospital. The heart attack was not serious but, due to the witness's advanced age and condition, his doctor said it was likely that he could have another seizure at any time. Thus, neither attorney again called him as a witness. Defendant moved for a mistrial, based upon sympathy generated in the minds of the jury by this incident. The court's refusal to grant a mistrial and its refusal to grant a motion for a new trial on the same ground are assigned as error. At the hearing on the motion for the new trial, the trial court discussed the attack suffered by Mr. Sifkowirtz, and then said in part:

"The jury was excused when it became apparent that he was suffering a physical lapse and he was thereafter excused and not recalled as a witness when it was determined the nature and extent of his physical disability. And for the life of me, I cannot see how this is prejudicial to either side. It was an incident that occurs with no preplanning and [over] which [n]either side had any control. I'm disposed to deny the motion on that ground and I'm making findings in effect of what I have said."

At the time of sentencing the trial judge said to the defendant:

"Mr. Steffes, I'm happy Mr. Jack didn't have a heart attack or the other gentleman because we

might easily be here on a manslaughter. or first degree murder indictment."

Defendant argues that this remark clearly shows that the trial judge himself was influenced adversely toward the defendant by the seizure suffered by the witness and that therefore the jury must also have been prejudiced. We do not so regard the judge's remark. A comment designed to cause the defendant to reflect upon the error of his ways is not prejudicial misconduct and does not indicate the lack of a fair trial. The jury had already made the determination between guilt and innocence. The trial judge is in a superior position to ascertain whether Mr. Sifkowirtz's disability during the trial interfered with the fairness of that trial. We adhere to the ruling expressed by the Supreme Court in *Hays v. Herman*, 213 Or 140, 145; 322 P2d 119 (1958), where the court said:

> "While the parties have cited cases from other jurisdictions, both allowing and denying a mistrial or a new trial for emotional outbursts, each one must necessarily depend upon its own facts. The common pattern running through most, if not all of them, is to sustain the action of the trial court, because of its superior opportunity to determine whether the weeping, or other display, was prejudicial in a given case. * * *"

Defendant has urged upon us the holding in *State v. Nunes*, 99 R I 1, 205 A2d 24 (1964). In that case, the defendant was found guilty of assault with intent to commit rape. At the bail revocation hearing, immediately after receiving the verdict, in explaining his reason for ordering revocation, the trial judge said:

> "* * * I am fully aware that by some miscarriage of justice he was found not guilty of [another] charge of rape on the same day; * * *."

The Rhode Island Supreme Court reversed, saying that the judge's remarks warranted the inference that the trial judge was sufficiently prejudiced that he should have granted a mistrial. Even if we were inclined to follow the *Nunes* ruling, we do not believe it should be extended to the comment of the trial judge in this case. The transcript of testimony discloses no remark by the judge which could have influenced the verdict of the jury. It was not error to deny the motion for mistrial and the motion for a new trial.

■ The defendant claims the trial court erred in allowing habitual criminal proceedings to be instituted against him, arguing that the court lacked jurisdiction to consider such proceedings while an appeal was pending. Relying upon ORS 19.033(1)[②] defendant claims that the trial court lost power to consider habitual criminal proceedings until after his appeal is decided. Defendant overlooks the wording of the habitual criminal act[③] which imposes a mandatory duty on the Dis-

[②] ORS 19.033(1):
"When the notice of appeal has been served and filed as provided in ORS 19.023 to 19.029, the Supreme Court shall have jurisdiction of the cause, but the trial court shall have such powers in connection with the appeal as are conferred upon it by law."

[③] ORS 168.055:
"(1) Within two years after conviction of the principal offense the district attorney in the county of conviction of the principal offense shall:
"(a) If he has reason to believe there has been a conviction which would justify an enhanced penalty for the principal offense under any applicable law, immediately investigate to determine whether there has been such a conviction; and,
"(b) If he obtains competent evidence of the conviction described in paragraph (a) of this subsection, immediately file with the court of conviction of the principal offense an information alleging that conviction.
"(2) If the district attorney files the information described

trict Attorney to institute habitual criminal proceedings with reasonable promptness after he knows that a defendant has a record of prior felony convictions. See *State v. Romero*, 1 Or App 217, 461 P2d 70 (1969). The court may then hold the proceedings in abeyance pending the appeal, or it can require a hearing after the expiration of the 15 days allowed by ORS 168.065. See *State v. Holbert*, 1 Or App 552, 464 P2d 834 (1970), and *State v. Young*, 1 Or App 562, 463 P2d 374 (1970).

The defendant has also appealed from the judgment of the court in the habitual criminal proceeding. His only challenge to the order providing an enhanced penalty is his claim that the court was without jurisdiction. Since we have determined that the trial court had jurisdiction to consider the habitual criminal proceedings, no further discussion of that appeal is necessary.

The judgment of the circuit court, including the order for an enhanced penalty, is affirmed.

---

in paragraph (b) of subsection (1) of this section, he shall immediately inform the defendant of the proceeding by having a copy of the information served personally upon the defendant by any person who is 21 years of age or older."