Argued May 19, affirmed August 12, petition for rehearing denied
September 17, petition for review denied November 3, 1971

STATE OF OREGON, *Respondent, v.* MICHAEL
RAY MITCHELL (C-59109), RICHARD ALAN
FISCHER (C-59110), TERRENCE JONES
(C-59110), THOMAS ALAN GRAVON (C-59112),
and VIRGINIA MARY LINNMAN (C-59113),
*Appellants.*

487 P2d 1156

*N. Robert Stoll,* Portland, argued the cause and filed the briefs for appellants.

*W. Michael Gillette,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

SCHWAB, C. J.

The defendants in this consolidated proceeding appeal from convictions of illegal possession of narcotics in violation of ORS 474.020. The main questions presented by these appeals are (1) does Oregon recognize the "exigent circumstances" exception to the requirements of its "knock and announce" statute, ORS 133.290, and (2) did such "exigent circumstances" exist in these cases? For the reasons which follow our answer to both of the questions is, "yes."

The defendant Gravon also assigns as error the court's refusal to allow him to call the defendant Jones as a witness before the jury. Jones had already testified in a hearing out of the presence of the jury that

he intended claiming his Fifth Amendment privilege if he were called as a witness.

The defendants were all arrested, indicted and convicted on the basis of evidence seized from a house in Portland. On April 30, 1970, four policemen arrived at the house armed with a valid search warrant. They knew from the affidavit in support of the warrant that an individual at those premises was engaged in sales of marihuana. Upon arrival the officers observed through a glass pane in the front door actions on the part of certain of defendants with a scale and some tin foil objects which, coupled with their previous information, justified their conclusion that these defendants had immediately at hand narcotics, which were the subject of the search, and that these narcotics were in small quantities.

The parties have stipulated that the police then

"* * * knocked and opened the door all in one movement. They did not knock and wait for any period of time between the time when they knocked and opened * * * the officers identified themselves * * * after the door was opened."

The police then seized the narcotics and narcotics paraphernalia, but only after attempts were made by various defendants to hide this contraband after police entry.

■ We turn now to the first question. Do the courts of Oregon recognize the "exigent circumstances" exception to the "knock and announce" statute?

This court has on at least two occasions recognized such an exception—in *State v. Steffes*, 2 Or App 163, 465 P2d 905, Sup Ct *review denied* (1970), and by way of dictum in *State v. Spicer*, 3 Or App 120, 473

P2d 147 (1970). The defendants argue that these holdings are inconsistent with the Oregon Supreme Court's ruling in *State v. Cortman,* 251 Or 566, 446 P2d 681 (1968), *cert denied* 394 US 951, 89 S Ct 1294, 22 L Ed 2d 487 (1968), and *State v. Hollman,* 251 Or 416, 446 P2d 117 (1968).

ORS 141.110 provides that in execution or service of a search warrant the officer has the same power of forcible entry that he has in the execution or service of a warrant of arrest.[①] ORS 133.290 provides:

> "The officer may break open any outer or inner door or window of a dwelling house, or otherwise, to execute the warrant if, after notice of his authority and purpose, he is refused admittance."

This language is typical of similar statutes in other states which also, as is the case in Oregon, do not ordinarily contain any statutory exceptions. The exceptions noted hereafter have been judicially carved out of the body of such statutes. The requirement of announcement and refusal stems from the common law. Regardless of whether announcement is constitutionally required in some cases it is clear that it can be dispensed with in some cases without violating constitutional requirements. *Ker v. California,* 374 US 23, 39-41, 83 S Ct 1623, 10 L Ed 2d 726 (1963). In *Ker,* the Supreme Court of the United States affirmed the California court's use of narcotics evidence where of-

---

[①] ORS 141.110 provides:

"In the execution or service of a search warrant, the officer has the same power and authority, in all respects, to break open any door or window, to use all necessary and proper means to overcome any forcible resistance made to him or to call any other person to his aid that he has in the execution or service of a warrant of arrest."

ficers entered defendant's apartment furtively. The police purpose was to avoid the disposal of the evidence and to prevent escape from arrest.

The Oregon Supreme Court has not squarely ruled on the "exigent circumstances" exception. In *State v. Cortman,* supra, the officers made the required announcement and the defendant's contention was that after making the announcement they did not wait long enough to allow him to open the door. The court there said:

> "Where, as here, the court found that the officers made the required announcement, we believe that the purposes of the statute were served and that it would be unrealistic to require the officers to delay their entry for a fixed period of time after making their presence and purpose known. The reasonableness of the officers' delay in a given set of circumstances will depend upon a number of factors, including the likelihood of destruction of evidence, danger to the officers, or danger to others. See *People v. Maddox,* 46 Cal 2d 301, 306, 294 P2d 6, cert. denied 352 US 858, 77 S Ct 81, 1 L Ed 2d 65 (1956). We hold that the failure of the officers to delay their entry until after the defendant could dispose of the evidence did not constitute a ground for excluding it." 251 Or at 570-71.

In *State v. Hollman,* supra, the court refused to rule on the question because the assignment of error had not been properly preserved in the trial court. There is nothing in those opinions inconsistent with our holding in *State v. Steffes,* supra, in which, after a discussion of *People v. Maddox,* 46 Cal2d 301, 294 P2d 6, *cert denied* 352 US 858, 77 S Ct 81, 1 L Ed 2d 65 (1956), and *Ker v. California,* supra, we held:

> "* * * Thus they [the police] had reasonable grounds to believe that tarrying in the hall outside

the defendant's door might expose them to danger. * * * There were exigent circumstances in this case which justified the officers in entering Steffes' room without first announcing their purpose." 2 Or App at 168-69.

The requirement of announcement and refusal prior to forcible entry exists primarily for the purposes of avoiding unnecessary violence and destruction of evidence—and not solely for the protection of privacy. Privacy is usually otherwise adequately protected under the Fourth Amendment to the United States Constitution and Oregon Constitution, Art I, § 9. See Blakey, *The Rule of Announcement and Unlawful Entry: Miller v. United States and Ker v. California,* 112 U of Pa L Rev 499 (1964). As stated in *People v. Rosales,* 68 Cal2d 299, 66 Cal Rptr 1, 437 P2d 489 (1968):

> "The statute reflects more than concern for the rights of those accused of crime. It serves to preclude violent resistance to unexplained entries and to protect the security of innocent persons who may. also be present on premises where an arrest is made * * *." 66 Cal Rptr at 4-5.

Therefore, where the existence of probable cause to search or arrest subjects privacy to invasion, the requirement furnishes a civility, particularly in an urban society, to lessen the likelihood of injury or conflict between the police and the citizen. As a civility, it is flexible in its application to the varying fact situations. It has even been suggested that it is not of a degree of importance which requires the application of the exclusionary rule, see Kaplan, *Search and Seizure: A No-Man's Land in the Criminal Law,* 49 Cal L Rev 475, 502 (1961), although the cases appear to be contra. The requirement being of statutory origin, Oregon

might well be free to follow the commentator's suggestion; however, we need not here decide this question.

The notice and refusal precondition for forcible entry has been adapted by the courts to the exigencies of this age of plentiful firearms and indoor plumbing.[⊛] Landynski, *Search and Seizure and the Supreme Court* 166 (Johns Hopkins Press, Baltimore 1966). Traditionally, forcible entry has been allowed where "exigent circumstances" exist to justify the exception. Particularly in narcotics and gambling cases, recent cases have allowed exception to the rule as a practical necessity. Therefore, where notice would imperil the officer, facilitate escape or allow the destruction of evidence, the requirement is dispensed with.

*Ker v. California,* supra, which decided that the states are free to interpret their own statutory rules of forcible entry so long as they are constitutionally reasonable, quoted extensively with approval from *People v. Maddox,* supra, in which officers made a narcotics arrest on probable cause without a warrant. They knocked on defendant's door. The defendant answered, "Wait a minute." The officers heard retreating footsteps, they kicked the door open, entered and only then announced themselves. The Supreme Court of California recognized that exigencies may excuse compliance with the statute, upheld the execution of the search and affirmed the conviction. Its reasoning, approved for state purposes in *Ker,* is applicable here:

> "The demand and explanation requirements of section 844 present a more difficult problem. The officer's compliance with them will delay his entry, and cases might arise in which the delay would permit destruction or secretion of evidence so that

---

[⊛] State v. Oare, 249 Or 597, 439 P2d 885 (1968).

what the search turns up would depend on the officer's compliance with the section. In other cases, however, the evidence may not be readily disposed of, and in still others it may be impossible to determine whether or not the evidence would still have been available had there been the delay incident to complying with the section.

"It must be borne in mind that the primary purpose of the constitutional guarantees is to prevent unreasonable invasions of the security of the people in their persons, houses, papers, and effects, and when an officer has reasonable cause to enter a dwelling to make an arrest and as an incident to that arrest is authorized to make a reasonable search, his entry and his search are not unreasonable. Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844. Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose. (*Read v. Case,* 4 Conn. 166, 170 [10 Am. Dec. 110]; see Rest., Torts, § 206, com. d.) Without the benefit of hindsight and ordinarily on the spur of the moment, the officer must decide these questions in the first instance. When, as in this case, he has reasonable grounds to believe a felony is being committed and hears retreating footsteps, the conclusion that his peril would be increased or that the felon would escape if he demanded entrance and explained his purpose, is not unreasonable. * * *. We conclude therefore that when there is reasonable cause to make an arrest and search and the facts known to him before his entry are not inconsistent with a good faith belief

on the part of the officer that compliance with section 844 is excused, his failure to comply with the formal requirements of that section does not justify the exclusion of the evidence he obtains." 46 Cal2d at 305-07.

The officers' on-the-spot decision is of necessity a hasty judgment based upon the facts—or reasonably founded suspicion—of the moment. Severe judicial second-guessing is therefore inappropriate. The officer must be given a degree of latitude for good faith judgment as to his own possible peril, e.g., *Gilbert v. United States,* 366 F2d 923 (9th Cir 1966), or as to the possibility for destruction of the evidence, fruits or instrumentalities of crime for which he is obliged to search. If the decision is reasonable under the "exigent circumstances," the entry is valid.

The exigencies of narcotics and gambling prosecutions have led to two types of treatment. In New York, it has been held by the Court of Appeals that, under their procedure, the issuing magistrate may actually "take judicial notice that [gambling paraphernalia] is easily secreted or destroyed if persons unlawfully in the possession thereof are notified in advance that the premises are to be searched." Thus, officers may be magisterially authorized to forcibly enter without announcement in any gambling case. *People v. De Lago,* 16 NY2d 289, 266 NYS2d 353, 213 NE2d 659, 661 (1965), *cert denied* 383 US 963, 86 S Ct 1235, 16 L Ed 2d 305 (1966).

On the other hand, California has declined to allow a blanket exception to the requirement in all narcotics cases. See *People v. Rosales,* supra (over three dissents); *People v. Gastelo,* 67 Cal2d 586, 63 Cal Rptr 10, 432 P2d 706 (1967). In the latter case,

for no reason of record, officers entered surreptitiously and arrested defendant while she was asleep in her bed. The court held that: "* * * Just as the police must have sufficiently particular reason to enter at all, so must they have some particular reason to enter in the manner chosen * * *." 67 Cal2d at 589.

Because of the nature of narcotics traffic, however, California and other jurisdictions have been quick to find some reason for entry without announcement and purpose. Cf. *Ker v. California,* supra, and *People v. Maddox,* supra.

In *State v. Steffes,* supra, we cited *Maddox* with approval and described its holding for excused compliance with "knock and announce" when (1) the police possess information which would lead them to reasonably believe the evidence would be destroyed, or (2) reasonably believe a culprit might escape, or (3) reasonably believe the police might face increased peril.

What constitutes "exigent circumstances" is discussed in more detail, and we think well stated, in *State v. Clarke et al,* Case No. 70-382 (DCA, Fla, filed July 1970). These, stated in substance, are:

(1) Where the person within already knows of the officer's authority and purpose; (2) where the officer is justified in the belief that the persons within are in imminent peril of bodily harm; (3) where the officer's peril would have been increased had he demanded entrance and stated the purpose; (4) where those within, made aware of the presence of someone outside, are engaged in activities which justify the officer in the belief that an escape or destruction of evidence is being attempted; or (5) where evidence would be destroyed if the officer announced his presence.

■ The remaining question with regard to the search is whether or not "exigent circumstances" existed in the cases at hand which justified the officers' entry without first giving notice of their authority and purpose. We hold that there was such an "exigent circumstance." Each case must necessarily be decided on its merits. Here the officers, having observed the crime of illegal possession of an easily-disposable quantity of marihuana, had good cause to believe that unannounced entry was necessary to prevent the destruction of the evidence. Narcotics, particularly in the small amount the officers believed they could see through the window, are easily disposable by swallowing or through use of plumbing. Announcement and disclosure of purpose might well only have assisted the defendants in disposing of the goods seized. There is no constitutional right to time in which to dispose of evidence. Subsequent evidence proved that the officers' fears were well warranted—the defendants attempted to dispose of the evidence even after the officers had made their entry.

■ The trial court correctly refused to allow defendant Gravon to call defendant Jones before the jury as a witness on Gravon's behalf. Out of the presence of the jury Jones, having been sworn, testified as follows by way of an offer of proof:

"Q. Did you ever live at 1904 Southwest Market Street?
"A. I would rather not answer that question under the grounds it may incriminate me.
"* * *

"Q. Who owned that marijuana?
"A. I also refuse to answer that question on the grounds it may incriminate me.

"Q. All right.

"Would this be your answer to any questions I ask regarding those premises?

"A. Yes, it would.

"\* \* \* All right. That is all."

The record shows that the co-defendant Jones would have claimed his Fifth Amendment privilege against being forced to testify against himself had he been called as a witness by defendant Gravon. Under the circumstances the only testimony that the jury could have heard would have been defendant Jones's claim of Fifth Amendment protection. The jury was not entitled, under these circumstances, to speculate as to the reason for the claim. *State v. Johnson,* 243 Or 532, 413 P2d 383 (1966); and see *State v. Harper,* 33 Or 524, 55 P 1075 (1899). As the court said in *Johnson,* at 538:

"Since the witness's right is personal and beyond the control of either the defendant or the state, it is quite clear that the exercise of the right by the witness should be treated as casting no inference either of guilt or innocence."

Accord, *Billeci v. United States,* 184 F2d 394 (DC Cir 1950), 24 ALR2d 881; *United States v. Romero,* 249 F2d 371 (2d Cir 1957); *Beach v. United States,* 46 F 754 (9th Cir 1890) (opinion by Mr. Justice Field on circuit). The rationale of these decisions is set out in the *Billeci* case at 184 F2d 398:

"\* \* \* The witness in such an incident is exercising a constitutional right personal to himself. That exercise, without more, should not be to the harm of someone else. His answer, if given, might conceivably be that he but not the defendant was guilty of the offense, or it might be that both he and the defendant were guilty; or it might relate entirely to some other offense. \* \* \*"

The defendant Gravon seeks to distinguish *State v. Johnson,* supra, by pointing out that there the state called the defendant's accomplice as a witness. The Supreme Court there said:

> "The state argues that the calling of a witness who is competent to testify should not be error since no one knows until the witness is on the stand that the witness will refuse to testify on the basis of self-incrimination.

> "In the present case no reasonable grounds for such belief existed, and the calling of the witness can be accounted for only on the basis of a purpose to prejudice the jury. If the state is at any time uncertain whether or not a witness will refuse to testify, this can be easily determined before the trial court in the absence of the jury and the appearance of purposeful prejudice avoided." 243 Or at 539.

We know of no good reason for holding it inappropriate for the state to make improper inferences, but proper for the defendant to so do. *Washington v. Texas,* 388 US 14, 87 S Ct 1920, 18 L Ed 2d 1019 (1967), cited by defendant Gravon in support of his position, is not in point. There an accomplice, when called by the defendant, was not permitted to testify because of a state procedural statute providing that persons charged as principals, accomplices or accessories in the same crime cannot be introduced as witnesses for each other. The United States Supreme Court held that this statute was violative of the Sixth Amendment right of an accused to have compulsory process for obtaining witnesses in his favor. The proposed witness in that case did not indicate as here that he would exercise his Fifth Amendment right against self-incrimination by refusing to testify.

Affirmed.