Argued January 18, affirmed March 20, reconsideration denied May 3,
petition for review allowed 282 Or 689, 580 P2d 179 (1978)

STATE OF OREGON, *Respondent,*

*v.*

JAMES CLIFTON FAIRLEY, *Appellant.*

(No. C 77-02-02660, CA 8857)

576 P2d 38

Marianne Oswald, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Catherine Allan, Assistant Attorney General, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Johnson, Joseph and Roberts, Judges.

JOSEPH, J.

## JOSEPH, J.

Defendant was convicted after trial to the court on a charge of criminal activity in drugs. ORS 167.207. He appeals, assigning as error the denial of his motion to suppress evidence seized from his person.

Two Portland police officers seeking a man who had earlier committed an armed robbery were parked along N. E. Killingsworth and observed an unoccupied car which had been identified by other police as one used on occasion by the suspected robber. They had been furnished a description and a photograph of the suspect. The officers saw the defendant walk down the driveway of a house in front of which the car was parked. One officer testified the defendant resembled the robbery suspect in height, weight and facial features. The other officer said he assumed defendant was the man they wanted because he was coming from the house where the car was parked.

As the officers started to drive toward defendant, he glanced at them. When he reached the sidewalk he turned and walked in the direction away from the police car, passing the suspect vehicle. He was starting up the steps of another house when the officers pulled up at the curb and got out of their car. One of the officers asked defendant to come back down to the sidewalk. Defendant came down and stood face to face with the officer, who testified that, after this closer look, he still resembled the robbery suspect. Defendant was asked for identification. He replied that he had none, but he did give his name. The officer then asked him to remove his hands from his jacket pockets. Defendant removed his right hand and held his arm down by his side but away from his body. He did not, however, do the same with his left arm, which he held tightly to his body, so that the officer could neither see nor readily touch the left pocket. Defendant testified that he removed his left hand slowly and held it over the pocket.

The officer patted the outside of the right pocket and without asking defendant to move his arm quickly reached inside the left pocket. The record does not disclose precisely how the officer gained access to the pocket. He testified that

"* * * because of the arm blocking the other pocket, I felt it was safer for me to just reach around quickly and run my hand into his pocket to pat that one down for a weapon."

When he reached into the pocket, the officer felt several plastic covered round objects which, from his experience, he concluded were "balloons" of drugs. He removed these objects, which did in fact turn out to contain drugs.

Defendant contends that the officers did not have a reasonable suspicion that he had committed a crime to justify the stop, as is required by ORS 131.615.[1] He also argues that in reaching into his pocket, rather than patting it externally, the officer violated defendant's rights under both ORS 131.625[2] and the Fourth Amendment to the United States Constitution as construed in *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968).

---

[1]ORS 131.615(1) provides that

"[a] peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry."

ORS 131.605(4) provides that

" '[r]easonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place he acts as authorized in ORS 131.605 to 131.625."

[2]ORS 131.625 provides that

"(1) [a] peace officer may frisk a stopped person for dangerous or deadly weapons if the officer reasonably suspects that the person is armed and presently dangerous to the officer or other person present.

"(2) [i]f, in the course of the frisk, the peace officer feels an object which he reasonably suspects is a dangerous or deadly weapon, he may take such action as is reasonably necessary to take possession of the weapon."

ORS 131.605(2) defines "frisk" as follows:

"A 'frisk' is an external patting of a person's outer clothing."

■ The police officers did know that a crime had been committed and had a description and photograph of the man believed to have committed it. Defendant came from the house in front of which the car known to have been used by the sought-for person was parked. One officer testified that defendant resembled the suspect in several respects. Based upon a comparison of defendant and the suspect's photograph, the trial court agreed that there was a reasonable similarity. There is nothing in the record other than unsubstantiated statements by defense counsel to indicate that the officer's belief that defendant was the suspect was not reasonable. The trial court ruled correctly that the stop was proper under both the statute and the Fourth Amendment. *See State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977).

The second argument raises a more substantial problem. In essence it comes to this: When an officer stops a person upon reasonable suspicion that he has committed a crime, and the officer has a reasonable suspicion that the person may be armed and presently dangerous, and the person acts in a manner which obstructs an external pat down, must the officer demand the suspect's cooperation or in some other manner attempt to overcome the obstructive behavior, or can the officer immediately go beyond a pat down if he does so in good faith to prevent harm to himself or others?

■ In *Terry v. Ohio, supra,* the Supreme Court recognized that an officer who has lawfully stopped a person on the street for investigatory purposes may for his own safety conduct a limited search (denominated a "frisk") if he reasonably suspects the person is armed and presently dangerous. Although the officer in that case limited his search to an external patting of the outer clothing until he felt weapons, the court outlined the permissible scope of a frisk in broader terms:

"* * * When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous

to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." 392 US at 24.

"* * * Thus [the frisk] must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby * * *." 392 US at 26.

The court reiterated that "the central inquiry under the Fourth Amendment [is] the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." 392 US at 19. Therefore, an external pat down does not seem to be the constitutional limit where a greater intrusion is reasonable under the circumstances. *See also State v. Ward,* 16 Or App 556, 519 P2d 1269, *rev den* (1974).

Where a police officer has been put in a situation which requires quick action in order for the officer to protect himself or others from reasonably apprehended immediate danger, we have been careful to take into account those circumstances when reviewing his action. As we noted in a somewhat different context:

"The officers' on-the-spot decision is of necessity a hasty judgment based upon the facts—or reasonably founded suspicion—of the moment. Severe judicial second-guessing is therefore inappropriate. The officer must be given a degree of latitude for good faith judgment as to any possible peril." *State v. Mitchell,* 6 Or App 378, 386, 487 P2d 1156, 1160, *rev den* (1971).

*See also State v. Riley,* 240 Or 521, 402 P2d 741 (1965). In this case the officer had a reasonable suspicion that defendant had recently committed an armed robbery. When the officer attempted an external pat down, defendant did not cooperate, but instead obstructed access to the exterior of his left pocket, creating further suspicion that he might be armed and presently dangerous. The officer felt it was necessary to act quickly, and he limited his intrusion to that

which seemed reasonably necessary under the circumstances to insure his safety and that of his fellow officer. Nothing in the record suggests that he was not acting in good faith. In light of the circumstances under which he was required to act, we do not find that the officer's actions were beyond the latitude afforded by *Terry* to insure the officers' safety.

■ The statutory stop and frisk provisions, ORS 131.605 et seq, are a different matter. Although the stop and frisk legislation originated as an attempt to codify the principles of *Terry v. Ohio, supra,* the provisions as enacted clearly depart from the standards set forth in that case. Under the statute, for example, an officer may only effect a "stop" if he believes a crime *has been* committed. In *Terry,* the officer made the stop because he believed a crime was *about to be* committed. With regard to the scope of the frisk allowed following a stop, the statute also departs materially from *Terry.* ORS 131.605(2) is not couched in broadly permissive terms. It defines "frisk" as "an external patting of a person's outer clothing." The state argues that ORS 131.605(2) should be qualified by reading it as if it said, "A frisk is an external patting of a person's outer clothing or some other type of limited intrusion if it is more reasonable under the circumstances." The state concedes that the legislative history of ORS 131.605(2) is conflicting and does not support its position.[3] This is a case squarely within the ambit of the express words used in the statute, and we are compelled to hold that the officer was not authorized to reach into defendant's pocket.[4]

■ The question remains whether that statutory violation calls for the exclusion of the drugs seized from defendant. In *State v. Valdez, supra,* the court applied

---

[3]The state does not claim that the officer had probable cause to make an arrest.

[4]In *State v. Shotwell,* 22 Or App 47, 537 P2d 588 (1975), defendant also resisted an examination of a bulge in his pocket. It is unclear from that opinion, however, whether the officer had or had not felt the bulge before the struggle.

the sanction of evidentiary exclusion where the initial stop of defendant violated ORS 131.615. The court explained:

> "* * * We do not always evoke [*sic*] the sanction of evidentiary exclusion for the violation of a statute. *State v. Valentine/Darroch,* 264 Or 54, 504 P2d 84 (1972), *cert. denied,* 412 US 948, 93 S Ct 3001, 37 L Ed 2d 1000 (1973). However, the purpose of the present statute is to protect interests of the kinds which are protected by the Fourth Amendment to the United States Constitution and by Art. I, § 9, of the Oregon Constitution. So far, the only practical method which has been devised to protect rights of this kind is exclusion of the evidence which is the fruit of violation. Otherwise, the statute can and will be ignored with impunity. Oregon recognized such a sanction as the proper method of dealing with this problem long before *Mapp v. Ohio,* 367 US 643, 81 S Ct 1684, 6 L Ed 2d 1081 (1961)." 277 Or at 629.

Although the court did not reach the issue, the police conduct in *Valdez* arguably violated the Fourth Amendment of the United States Constitution and Art I, § 9 of the Oregon Constitution, as well as the statute. Furthermore, it may well be asked why the result was reached without any attention to *legislative* intent. *Cf.* ORS 133.673, dealing with warranted searches.

In *State v. Valentine/Darroch,* 264 Or 54, 504 P2d 84 (1972), *cert den,* 412 US 948 (1973), the court held that police conduct in violation of the Oregon knock and announce statute did not require exclusion. Citing *Linkletter v. Walker,* 381 US 618, 85 S Ct 1731, 14 L Ed 2d 601 (1965), the court stressed that the primary purpose of exclusionary rules is to deter unlawful police action. It was held that exclusion would not serve that deterrent function, the court noting that police self-interest would deter them from making unannounced entries.

In *Terry v. Ohio, supra,* the Supreme Court noted that

> "[r]egardless of how effective the [exclusionary] rule may be where obtaining convictions is an important

objective of the police, it is powerless to deter invasions of constitutionally guaranteed rights where the police either have no interest in prosecuting or are willing to forgo successful prosecution in the interest of serving some other goal." 392 US at 14.

Given that in reaching into defendant's pocket the officer in this case was acting in a good faith effort to protect himself and his fellow officer from physical harm, it is unlikely that exclusion of the evidence would have any desirable deterrent effect upon other officers acting in the same circumstances.

Although the language employed in *Valdez* could be taken as suggesting otherwise, we do not read that opinion as requiring the application of the exclusionary rule to all violations of the stop and frisk provisions without regard for whether the primary purpose of the rule will be furthered.[5] The following statement bears repeating:

"* * * [A] trial [is] a search for truth and, therefore, competent evidence should never be excluded except for the most compelling reason." *State Forester v. Umpqua River Navigation Co.,* 258 Or 10, 26, 478 P2d 631, 639, *cert den* 404 US 826 (1970).

Affirmed.

---

[5]Comments in *State v. Miner,* 31 Or App 495, 570 P2d 998 (1977), concerning the application of the exclusionary rule to violations of the stop and frisk statutes were not intended to cover situations in which the violation occurs when the officer is acting in good faith out of concern for his safety or the safety of others.