Argued June 16, affirmed as modified August 6, petition for
rehearing denied September 8, 1970

# STATE OF OREGON, *Respondent, v.*
# GALAN PAUL CLIPSTON, *Appellant.*

473 P2d 682

*Gary D. Babcock*, Public Defender, Salem, argued the cause and filed the brief for appellant.

*Jesse R. Himmelsbach, Jr.*, District Attorney, Baker, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

LANGTRY, J.

Defendant has appealed from conviction on five counts of an eight-count indictment: two counts of assault with intent to commit first degree murder, one of being an ex-convict in possession of a concealable firearm, one of mayhem, and one of carrying a firearm with intent to use it. Competent evidence, if believed, established that on December 21, 1967, defendant Clipston and his friend, Daniel Death, Jr., armed with a shotgun which had had its barrel and stock sawed off, forced their way into a suburban home near Walla Walla, Washington, and robbed the householders of money and other possessions, including a .22 revolver. The sawed-off shotgun was described in detail by the householder. His description corresponded with the shotgun in evidence. A part of a shotgun stock fitting the part of the stock remaining on this gun was found in trash adjacent to Death's home, and received as an exhibit.

On December 30, 1967, a Ford Thunderbird was stolen from an automobile dealer in Caldwell, Idaho, and on December 31, 1967, Clipston was driving this Ford when it had a flat tire on Highway 30 in Baker County, Oregon, some 20 miles south of Baker City. Clipston telephoned from Baker to Death at Telocaset, a small railroad settlement some distance from Baker. Death, wearing the .22 revolver taken in the Washington robbery and accompanied by two other men, took a spare wheel and tire from Death's automobile and drove a Chevrolet to Baker where they picked up Clipston. The four drove the Chevrolet to the Ford south of Baker, but on the way they were stopped by State Police Officer Duggan, who checked one of the other two men who was driving the Chevrolet for his

driver's license, and then let them proceed. At that time, Officer Duggan noticed that Death's hand was covered with gauze. As they proceeded on testimony was that Death made the statement in the hearing of all, "you didn't have to worry, I had him covered."

They arrived at the Ford, changed the tire, and Death and Clipston, in the Ford, followed the other two men who were in the Chevrolet back toward Baker. Duggan had already proceeded in the same direction. Both automobiles passed him. The Ford was weaving in traffic, and without knowing that it was occupied by Death and Clipston, he pulled it over for a check. It was about 11 p.m., and dark. Duggan, carrying a flashlight in his left hand, approached the Ford and noticed a .22 rifle on the back seat. Clipston had difficulty producing identification and registration for the Ford and appeared nervous. Duggan noticed Death's hand, still covered with gauze, and realized that it was the same man whom he had just recently seen in another automobile. Suspicious, he backed away, telling the occupants to slide out on the driver's side. Clipston alighted from the Ford with his back to the officer, then whirled and shot the sawed-off shotgun. The load of No. 6 shot struck Duggan in the left hand, demolishing the flashlight and causing a severe wound to the hand and loss of a finger. He fell backward, Clipston tossed the shotgun into the car, grabbed the rifle from the back seat and shot Duggan in the hip. Duggan got his revolver out of its holster and shot at Clipston, who ran to the front of the Ford. Death had gotten out on the other side of the Ford and fired the .22 revolver over the top at Duggan. Duggan returned the fire as Death jumped over the highway guardrail, and hit Death in the head. Death was dead. Clipston continued firing the .22 rifle at Duggan who shot back.

Clipston discarded the rifle, jumped in the Ford in an apparent attempt to escape, and Duggan fired his remaining shot through the back of the Ford, striking Clipston in the neck. He came back out of the Ford holding his neck as Duggan was taking his .30-.30 rifle from the police car and laid down on the highway as Duggan ordered him to do. Help arrived in a few minutes and Clipston and Duggan were taken to the hospital.

The Baker County Grand Jury returned an eight-count indictment against Clipston:

"* * * LARCENY OF AN AUTOMOBILE (ORS 164.310 (1) (a)), (Count One), ASSAULT WITH INTENT TO COMMIT FIRST DEGREE MURDER [with a sawed-off shotgun] (ORS 163.-280), (Count Two), ASSAULT WITH INTENT TO COMMIT FIRST DEGREE MURDER [with a .22 rifle] (ORS 163.280), (Count Three), BEING AN EX-CONVICT IN POSSESSION OF A CONCEALABLE FIREARM [a sawed-off shotgun] (ORS 166.270), (Count Four), BEING AN EX-CONVICT IN POSSESSION OF A CONCEALABLE FIREARM [a .22 pistol] (ORS 166.270), (Count Five), LARCENY OF A REVOLVER (ORS 164.310 (1) (b)), (Count Six), MAYHEM, (ORS 163.230), (Count Seven), CARRYING DANGEROUS WEAPON WITH INTENT TO USE IT (ORS 166.220), (Count Eight) * * *."

The defendant demurred, based upon the provisions of ORS 135.630 (2) and (3), and ORS 132.560:

ORS 135.630:

"The defendant may demur to the indictment when it appears upon the face thereof that:
"* * * * *
"(2) It does not substantially conform to the requirements of ORS 132.510 to 132.570 * * *.

"(3) More than one crime is charged in the indictment * * *."

ORS 132.560:

"The indictment must charge but one crime, and in one form only, except that:

"(1) Where the crime may be committed by the use of different means, the indictment may allege the means in the alternative.

"(2) When there are several charges against any person or persons for the same act or transaction, instead of having several indictments, the whole may be joined in one indictment in several counts; and if two or more indictments are found in such cases, the court may order them to be consolidated."

The demurrer was overruled based upon *State v. Huennekens*, 245 Or 150, 152, 420 P2d 384 (1966), in which the Oregon Supreme Court construed ORS 132.560 (2) saying:

"* * * [T]he idea permeates the cases that to be joined the charges must relate to conduct or acts that are concatenated in time, place and circumstances and that the evidence on one charge would be relevant and admissible with the evidence of the other charges * * *."

Count One, larceny of the automobile, and Count Six, larceny of the revolver, stated that those respective larcenies occurred on December 31. The prosecution's theory in making these allegations of time is that larceny is a continuing crime, and, although the larcenies commenced at earlier dates, each was still being committed on December 31. We deem it unnecessary to consider this theory in view of our decision, infra. In *Huennekens,* the court held that where it does not appear on the face of the in-

dictment that the various crimes charged could not be a part of the same transaction, the demurrer must be overruled, and if some counts are to be eliminated, it must be done on trial.

■ Such was the situation facing the trial court at the time it ruled on the demurrers, and we hold it ruled correctly. We hold, infra, that no prejudice resulted to the defendant. ORS 132.590 provides:

> "No indictment is insufficient, nor can the trial, judgment or other proceedings thereon be affected, by reason of a defect or imperfection in a matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

■ On trial, after evidence had been received and upon motion of the defendant, the court eliminated Counts One, Four and Six—One and Six because the court determined that those alleged larcenies were not a part of the same transaction, and Four because the state's evidence was that the sawed-off shotgun was not a concealable weapon under the provision of ORS 166.210, which defines a concealable weapon. We hold that the trial court was correct in these rulings, and we hold that Count Five, ex-convict in possession of a .22 revolver, and Count Seven, mayhem, were separate crimes but a part of the same transaction. (Detailed reasoning, infra.)

We have held that it was proper to overrule the demurrer. This covers one assignment of error. Other assignments are that the court erred (1) in denying the defense attorney's challenge of five jurors; (2) in overruling motions for election, mistrial and for a new trial with reference to Counts One, Four, Five and Six; (3) in denying motion for merger and election

with regard to Counts Two, Three and Eight; and (4) in denying motion for judgment of acquittal for insufficient evidence.

## 1. ASSERTED ERROR CONCERNING CHALLENGE OF FIVE JURORS.

■ The events which led to the indictment were widely publicized. All prospective jurors were questioned about what they had read or heard. Several publications had mentioned that the defendant was an ex-convict. Principal thrust of the questioning was whether prospective jurors had been exposed to this information, and, if they had been exposed, whether they remembered it. The trial judge carefully kept anyone from saying exactly what the publications had reported. Pursuant to defense challenges for cause he repeatedly excused prospective jurors who stated that they had memory of what was in the publications. Of the five to whom he did not sustain defense challenges each said in effect that she had no memory of what she had heard or read about the case, except that there was such a happening.

The charge of Count Five, defendant being an ex-convict in possession of a revolver, was eventually to go to the jury and for this reason evidence of his being an ex-convict was received. The defendant did not testify. The trial court carefully instructed the jury that its knowledge about the defendant being an ex-convict could not be considered against him except as an element of proof under Count Five. In *Marshall v. United States*, 360 US 310, 312, 79 S Ct 1171, 3 L Ed 2d 1250 (1959), which has been urged upon us by the defendant, the court said:

"The trial judge has a large discretion in ruling

on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial. Holt v. United States, 218 U. S. 245, 251. Generalizations beyond that statement are not profitable, because each case must turn on its special facts * * *."

In *Marshall*, the court held that there was prejudice, but there seven out of the twelve jurors, during the trial, read newspaper accounts which stated that the defendant was an ex-convict, and in the case that fact was not allowed in evidence. The instant case is quite different factually. We find no merit in this assignment.

2. THE MOTIONS FOR ELECTION, MISTRIAL AND FOR A NEW TRIAL BASED UPON REFERENCE TO COUNTS ONE AND SIX (LARCENIES) AND FOUR AND FIVE (EX-CONVICT IN POSSESSION).

 The fact that Counts One and Six were in the case until evidence concerning them was heard by the jury was not prejudicial. See ORS 132.590. Evidence about the other recent crimes was relevant not only to prove motive for the instant crime, but, also, premeditation, deliberation and malice. If Clipston or Death were found to be in possession of the revolver taken in the armed robbery in Washington, or of the automobile stolen in Idaho, they would be charged with those crimes. This was an obvious motive for shooting it out with the officer. Death had already said, "you didn't have to worry, I had him covered." This remark, coupled with their collaboration in earlier crimes, evidenced deliberation, premeditation, and malice. *State v. Long*, 195 Or 81, 244 P2d 1033 (1952); *State v. Woolard*, 2 Or App 446, 467 P2d 652 Sup Ct *review denied* (1970). It has often been said

that a person cannot diminish the volume of competent evidence against himself by increasing the volume of his crimes.

Detailed testimony given by the couple from Washington about the holdup, their identification of defendant and Death, and their description of the sawed-off shotgun was relevant with the other evidence to prove that defendant and Death were aiding one another at the time the police officer stopped them. It was thus relevant as to whether Clipston had control over the .22 revolver stolen in the Washington robbery.

The evidence of the Washington and Idaho crimes could have been properly received had Counts One and Six of the indictment been taken out by the demurrer, or never charged. No prejudice resulted because they were allowed to remain in the indictment until supporting evidence was heard.

Count Four, which alleged defendant was an ex-convict in possession of a concealable firearm (a sawed-off shotgun) was withdrawn from the jury because ORS 166.210 defines such a firearm as one with a barrel less than 12 inches in length. The shotgun was in evidence and its barrel was 12¼ inches long. It was in the prosecution's possession from the night of December 31; thus, the district attorney knew from the time the indictment was returned that this count could not be proven. Were it not for the holding we make with reference to Count Five, infra, the prejudice from including this count in the indictment would require reversal.

However, we hold that Count Five, which alleges that defendant was an ex-convict in possession of the .22 revolver, was a valid charge. The evidence

allows the inference that the defendant shared physical possession with Death of this weapon and the other weapons which they used at and after the Washington robbery on December 21.

ORS 166.270 provides:

"* * * [A]ny person who has been convicted of a felony against the * * * property of another * * * who owns, or has in his possession or under his custody or control any pistol, revolver or other firearm capable of being concealed upon his person * * * shall be punished upon conviction * * *."

The court instructed the jury that the elements which the state must prove beyond a reasonable doubt were:

"* * * [T]he defendant was a person who had been convicted of a felony against the property of another * * * that he had under his control a revolver * * *.

"* * * Now, in respect to this element of control, the term 'control' implies and means substantially the same as possession. Standing alone and unqualified as the word does in the indictment it necessarily means not partial but complete control. Control of this character may be either personal or through an act, but before control by an act could be established the fact of agency must first be made to affirmatively appear. As used in this sense agency would imply and require that the agent was acting not on his own behalf but solely on behalf of the principal."

In *People v. Britton,* 134 AD 275, 118 NYS 989, 24 NY Crim 40 (1909), a criminal statute of New York made it unlawful to have "in possession, custody or control" certain property. Construing this language, the court said:

"* * * If physical possession was required, the words 'custody, or control' are meaningless, and

plainly those words are not used synonymously with 'possession.' * * * One may * * * exercise control over what is not in his physical possession * * *."

No error is asserted concerning any instruction, but if there be error in this instruction, it is that it unduly limited the application of ORS 166.270. The evidence taken as a whole, at the least, justified the jury in finding that Clipston was exercising joint control over the revolver, even though Death had it strapped on himself, and he was the one who shot it. Count Five was properly submitted to the jury. The proof under it that defendant was an ex-convict was necessary. We conclude that assignment of error No. 2 asserts no reversible error.

3. ASSERTED ERROR IN DENYING MOTION FOR MERGER AND ELECTION WITH REGARD TO COUNTS TWO, THREE AND EIGHT.

Counts Two, Three and Eight stem from defendant's physical possession and use of firearms with which he allegedly intended to and did commit assault upon Duggan. We think that the use of the shotgun and the .22 rifle constituted but one transaction. See *State v. Huennekens*, supra. In *State v. McDonald*, 231 Or 48, 53-54, 365 P2d 494 (1962), the Oregon Supreme Court said:

"* * * The same transaction is usually to be found in a continuing crime. Such a crime has been defined as a 'continuous unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may operate' * * *."

There are a variety of opinions regarding crimes that can be charged out of the same transaction or act.

In California, where, as distinguished from Oregon, a statute prohibits multiple punishment for a single act, there have been several instructive discussions by the appellate and Supreme courts. In *In Re Chapman*, 43 Cal2d 385, 273 P2d 817 (1954), the court said:

> "* * * It is only when the two offenses are committed by the same act or when that act is essential to both that they may not both be punished [citing cases] * * *." 43 Cal2d at 390.

In *People v. Slobodion*, 31 Cal2d 555, 191 P2d 1, cert denied 335 US 835, 69 S Ct 24, 93 L Ed 387 (1948), Mr. Justice Traynor said:

> "It is true that the acts in the present case were all committed within a relatively short time. Nevertheless, defendant committed acts separately denounced in two code sections * * * *and these offenses are not necessarily or even normally associated with each other*." (Emphasis supplied.) 31 Cal 2d at 563.

Although the defendant's acts in that case could be considered both rape or attempted rape and lewd and lascivious conduct, because the acts were separately denounced in two code sections and they were "not necessarily or even normally associated with each other," the court held they could both be charged in one indictment *"just as mayhem can be separate from rape even though it may have occurred during an episode involving rape."* (Emphasis supplied.) 31 Cal2d at 563.

■ In *Williams v. Oklahoma*, 358 US 576, 79 S Ct 421, 3 L Ed 2d 516 (1959), it was held by the United States Supreme Court that where a series of acts involving kidnapping and murder of a victim culminated in a charge of murder which was tried first and resulted

in a life sentence, and kidnapping, which was tried later and resulted in a death sentence, they were separate and independent offenses and conviction of each was valid. In that case the court said that there was no merit to the claim that the kidnapping "merged" in the crime of murder, this because they were separate offenses punishable under separate statutes. In the case at bar, mayhem, charged in Count Seven, and being an ex-convict in possession of a firearm, charged in Count Five, were different and independent crimes, provable by some different evidence, and "not necessarily associated" with the crimes charged in Counts Two, Three and Eight. But they were a part of the same transaction and properly survived the demurrer and motions.

We view the defendant's acts in firing the sawed-off shotgun and the rifle at Officer Duggan and his carrying of them with intent to use them as one transaction. In *State v. Gauger*, 200 Kan 515, 524-525, 438 P2d 455 (1968), the court said:

"* * * [A] conviction of first degree robbery * * * would bar prosecution for assault with intent to rob when the same act of violence or intimidation is relied on to sustain both convictions [citing cases].

"In the instant case there was but a single act of violence or intimidation, and that act, which was an essential element of the robbery conviction, was also relied on as constituting the separate crime of assault with intent to rob. Under such circumstances, we hold that two separate convictions cannot be carved out of the one act of criminal delinquency. This situation is clearly distinguishable from those cases where a single criminal transaction constitutes two separate offenses because evidence required to prove the two offenses would not be the same. (See, e.g., *State v. Brown*, 181

Kan. 375, 312 P. 2d 832 (first degree kidnapping and forcible rape); *Wagner v. Edmondson*, 178 Kan. 554, 290 P. 2d 98 (assaulting a jailer and jailbreak); *Wiebe v. Hudspeth*, 163 Kan. 30, 180 P. 2d 315 (statutory rape and incest))."

In *People v. Coltrin*, 5 Cal2d 649, 660, 55 P2d 1161 (1936), the court said:

"* * * If the act involved in one charge is necessarily involved in the other and is merely incidental to that charge but one offense is committed and it cannot be carved into two offenses * * *."

If the prosecution's theory in the instant case were correct, as defendant points out in his brief, each time Clipston pulled the trigger on a firearm during the few seconds which encompassed the action, he would be guilty of a new crime for which he could receive an additional penalty of life imprisonment. The action cannot thus be carved into multiple crimes. Counts Two and Three are the same crime, punishable under the same statute, and Count Eight is merely incidental to and necessarily involved in Counts Two and Three.

It does not follow that the error in allowing these multiple counts to stand must result in a new trial. In *People v. Clemett*, 208 Cal 142, 280 P 681 (1929), where the California Supreme Court re-affirmed its earlier decision in *People v. Frank*, 28 Cal 507 (1865), the indictment contained two counts for only one crime. The court held that the indictment is good whether it be regarded as containing one or two counts. But where there is a series of acts which separately or together constitute the offense and all of the acts are committed by the same person at the same time only one punishment may be inflicted.

In *Zovick v. Eaton*, 259 AD 585, 20 NYS2d 447 (1940), the defendant committed a robbery by pointing a loaded revolver at the victims and taking their money. He was charged with armed robbery and assault with a loaded gun in two counts and sentenced separately on each conviction. The court said:

> "* * * Assuming * * * for the sake of argument that the trial court properly submitted * * * two crimes arising out of a single transaction, it could only pass judgment * * * on * * * the highest grade of offense." 20 NYS2d at 449.

In *State v. Hill*, 44 NJ Super 110, 129 A2d 752 (1957), defendant was convicted of robbery and assault with intent to rob. Both counts grew out of the same completed robbery. He was sentenced to concurrent terms. The court said:

> "* * * The lesser offense was a component part of the greater and a merger of the two arose upon conviction of the latter.
>
> "The test to be applied in deciding the issue of merger is whether a particular act involved in a single transaction is a distinct criminal affair or an integral part of the principal offense charged * * *.
>
> "* * * Therefore, only one sentence, and that for the major crime, was proper * * *.
>
> "The fact that the sentences imposed are concurrent does not alter their illegality * * * his record * * * will show two convictions where only one should be recorded * * *." 44 NJ Super at 112-13.

The New Jersey court vacated the sentence on the lesser offense. See also *Smith v. State*, 6 Md App 114, 250 A2d 272 (1969).

In the case at bar, we have concluded that Counts

Two, Three and Eight should have been one. In view of the convictions for each they are merged and the sentence of life imprisonment under Count Two should stand. The sentences of life and one year imprisonment under Counts Three and Eight, which were imposed to run concurrently with other sentences, must be vacated.

The multiple counts of this indictment present an example of a zealous district attorney indulging in attempted overkill to the extent that he has come perilously close to losing a clear-cut case. It is questionable if the eight-count indictment was justified when consideration is given to the possibilities of added expense to county and state, added crowding of dockets and delay, and a clearly guilty defendant going unpunished.

4. ASSERTED ERROR IN DENYING THE MOTION FOR JUDGMENT OF ACQUITTAL FOR INSUFFICIENT EVIDENCE.

■ The recital of facts which we have taken from the transcript and which the jury could have believed from the evidence, indicates an abundance of competent evidence upon which the jury based its verdicts.

The case is remanded with directions to vacate the sentences imposed under the guilty verdicts on Counts Three and Eight. In all other respects the judgment is affirmed.