Argued May 20, reversed and remanded September 21, 1971

# STATE OF OREGON, *Respondent, v.* STEPHEN RUSSELL GASSNER, *Appellant.*

488 P2d 822

*Robert J. McCrea,* Eugene, argued the cause for appellant. With him on the brief were Mulder, Morrow & McCrea, Eugene.

*W. Michael Gillette,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

SCHWAB, C. J.

The defendant appeals from a conviction of illegal possession of narcotics in violation of ORS 474.020. The sole issue presented concerns the legality of the method of execution of a search warrant. The trial court denied a motion to suppress and this ruling is the basis of defendant's appeal. We reverse.

On May 10, 1970, several Corvallis police, armed with an admittedly valid search warrant, assembled near an apartment in that city jointly occupied by defendant and one Paul Warren. Sergeant Miller of the police department, who was in charge of the search, had the manager of the apartment house accompany him to the front and only door of the apartment. No activity was noted in or around the apartment prior to approaching the door. Sergeant Miller knocked with two raps, but did not announce his identity or purpose, or make any other announcement. Hearing no immediate response he quickly directed the manager to unlock the door with a pass key. Sergeant Miller immediately pushed open the door and entered the apartment. As he entered, he saw the defendant in the living room of the apartment. The officer testified that

the defendant was standing motionless at least 10 feet from the door. The defendant testified that he was walking toward and was within six feet of the door at the time of the police entry. The apartment manager remembered defendant's being about six feet from the door and facing it, but was not certain whether he was walking toward it. In any event, it is agreed that no announcement was made until Sergeant Miller had crossed the threshold, at which time the officer advised the defendant of his identity and purpose.

As Sergeant Miller was entering, the several other officers accompanying him hurried to various points in the apartment. The search that followed produced a substantial amount of illegal drugs. At the suppression hearing, Sergeant Miller testified that he had no concern about the destruction or disappearance of evidence, and he did not say anything to indicate concern for his safety or the safety of others. His only justification for entry without announcing his purpose was that he believed the apartment to be vacant.

Defendant contends that since the police did not make an announcement of their identity and purpose before entering the apartment the search was illegal.

■ ■ Defendant's arguments raise both statutory and constitutional problems.[1] ORS 133.290[2] establishes

---

[1] All the cases, whether decided on constitutional or statutory grounds, agree that all unauthorized police entries are to be treated the same. Even the use of a pass key is a "breaking" in this context. See Ker v. California, 374 US 23, 83 S Ct 1623, 10 L Ed 2d 726 (1963), and Sabbath v. United States, 391 US 585, 88 S Ct 1755, 20 L Ed 2d 828 (1968).

[2] ORS 133.290 provides:

"The officer may break open any outer or inner door or window of a dwelling house, or otherwise, to execute the warrant if, after notice of his authority and purpose, he is refused admittance."

the general rule that officers should give notice of their authority and purpose when executing a search warrant, but as we have previously held, this statute is subject to exceptions when exigent circumstances exist. *State v. Mitchell et al,* 6 Or App 378, 487 P2d 1156 (1971), Sup Ct *review denied* (1972). Defendant's statutory arguments thus present the question of whether there were exigent circumstances in this case justifying non-compliance with ORS 133.290.

There are, in addition, constitutional limits on the authority of the police to make unannounced searches. The Fourth Amendment to the United States Constitution prohibits unreasonable searches, and in *Ker v. California,* 374 US 23, 83 S Ct 1623, 10 L Ed 2d 726 (1963), eight Justices agreed that, in general, announcement is an essential element of a reasonable search.[9] Although there is some confusion in the cases, this analysis of *Ker* is endorsed by most, if not all, commentators. Blakey, *The Rule of Announcement and Unlawful Entry: Miller v. United States and Ker v. California,* 112 U of Pa L Rev 499, 551 (1964); Sonnenreich and Ebner, *No-Knock and Nonsense, An Alleged Constitutional Problem,* 44 St. John's L Rev 626, 640 (1970); Note, *Announcement in Police Entries,* 80 Yale L J 139, 146 (1970); Note, *No-Knock and the Constitution: District of Columbia Court Reform and Criminal Procedure Act of 1970 [A Critique and Proposed Alterations],* 55 Minn L Rev 871, 884 (1970).

---

[9] Ker v. California, 374 US 23, 83 S Ct 1623, 10 L Ed 2d 726 (1963), is the only Supreme Court case in which the constitutional limits on unannounced-entry searches were directly at issue; the only other Supreme Court cases involving such searches were all decided on statutory grounds. See, Miller v. United States, 357 US 301, 78 S Ct 1190, 2 L Ed 2d 1332 (1958); Wong Sun v. United States, 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963); Sabbath v. United States, 391 US 585, 88 S Ct 1755, 20 L Ed 2d 828 (1968).

Were we able to consider this matter in the absence of *Ker,* we would have no trouble in concluding that the announcement requirement is never of constitutional proportions. As we noted in *State v. Mitchell et al,* supra, the announcement rule originated at common law and was always subject to exceptions and qualifications. It has recently been observed that:

> "Proponents of a strict announcement requirement have created a constitutional certainty from a common-law uncertainty * * *. To elevate the announcement rule to a constitutional requirement in 1963 was probably historically unsound. To premise it upon a vague right of privacy, rather than on the avoidance of potential violence was a further departure from precedent * * *.

> "It is difficult to see, however, what actual protection is given to any right of privacy by the announcement rule. Once identity and purpose are stated, entry must always be permitted; if permission is denied, or even delayed for an inordinate amount of time, entry may be forced, provided the officer has a valid purpose in gaining admission. Since no discretion is vested in the occupant, in what manner does notice protect his privacy? * * *." Sonnenreich and Ebner, supra, 44 St. John's L Rev at 646-47.

We are, however, not free to consider whether *Ker* is correct or incorrect; instead, we are limited by its authority and must apply the constitutional rule it establishes.

The general constitutional rule, like the general statutory rule, is subject to exception when exigent circumstances can be shown. In *Ker* itself, the Supreme Court split four-to-four over whether sufficient exigent circumstances were present. Defendant's constitutional arguments thus present the question of

whether there were exigent circumstances in this case justifying non-compliance with the general rule of *Ker*.

Against this background, we return to the facts of this case. The state contends exigent circumstances were present excusing lack of announcement in this case because: (1) the officers believed the apartment to be vacant; and (2) the evidence sought (narcotics) was readily disposable. We disagree with both contentions.

Sergeant Miller's belief that the apartment was vacant was not justified. He knocked, waited "a moment,"[2] and then entered with a pass key. His assumption that the apartment was vacant could only have been based on the fact that there was not an immediate verbal or other response to his knock. The officer's assumption was unwarranted; people hearing a knock on their door or their doorbell ring do not necessarily shout through the door, "Yes, I'm coming," or "Who is it?". Many people would just go to answer the door, as defendant testified he did in this case.

The officers knocked on the door at about 2:30 on a Sunday afternoon—a time when it was reasonable to expect to find someone at home. The apartment area had been under surveillance for about a half hour before that time and the officers had not seen anybody come or go—an observation that makes it just as likely

---

[2] It would have been of assistance to our consideration of this issue if the state had developed a more detailed record at the suppression hearing below. If we knew that Sergeant Miller had waited a reasonable length of time after knocking and before concluding the apartment was vacant, this decision might be different. But the only thing the record tells us about the time interval between the knock and the entry is that it was "a moment," according to Sergeant Miller, or the time it took to walk 15 to 20 feet toward the door, according to the defendant. We cannot conclude from such a record that Sergeant Miller waited long enough to reasonably conclude the apartment to be vacant.

as not that somebody will be home. And there is some indication in the testimony of the apartment manager that the police plan, before they even went to the apartment, was to just knock and enter with the pass key.

■ Remembering that "the burden of making an express announcement [of authority and purpose] is certainly slight," *Miller v. United States,* 357 US 301, 309, 78 S Ct 1190, 2 L Ed 2d 1332 (1958), and reviewing all the above factors relevant to whether the officers reasonably believed the apartment to be vacant, we conclude that since that belief was unwarranted, the search was in violation of ORS 133.290.

■ Were this the only issue in the case, we would now be faced with a novel suppression question. When all that is shown is the violation of a "knock and announce" statute, the cases seem to have always assumed, without discussion, that suppression is the appropriate remedy; e.g., *Miller v. United States,* supra. We see no reason why this result must follow automatically. Of course, evidence illegally seized in violation of the United States Constitution *must* be suppressed. *Mapp v. Ohio,* 367 US 643, 81 S Ct 1684, 6 L Ed 2d 1081, 84 ALR2d 933 (1961). Evidence illegally seized in violation of a local statute, such as ORS 133.290, *may* be suppressed. It is important to realize, however, that the plea for suppression should be addressed to this court's discretion in the exercise of its supervisory authority over the administration of criminal justice.[9]

---

[9] The leading example of supervisory suppression is the *McNab-Mallory* rule. See McNab v. United States, 318 US 332, 63 S Ct 608, 87 L Ed 819 (1943), and Mallory v. United States, 354 US 449, 77 S Ct 1356, 1 L Ed 2d 1479 (1957). It prohibits the use in evidence of any statements obtained from the defendant if his appearance before a magistrate is unreasonably delayed. Oregon

■ We need not decide the supervisory suppression question here. We will have to decide this question if and when we are presented with a case that reveals a violation of the statutory announcement rule and no violation of the constitutional announcement rule. Such a case is a distinct possibility because it appears that the exceptions to the constitutional announcement rule of *Ker* are not necessarily coextensive with the exceptions to our announcement statute. If they were, it would have made no sense for the *Ker* court to say:

> "* * * [Mapp v. Ohio] established no assumption by this Court of supervisory authority over state courts * * * and, consequently, it implied no total obliteration of state laws relating to arrests and seizures in favor of federal law * * *." 374 US at 31.

This means, we believe, that the Fourth Amendment sets the extreme outer limits on permissible unannounced searches, with state courts free to fashion higher standards of police conduct under their local statutes, such as ORS 133.290. It follows logically that the exceptions to the constitutional rule of announcement may be greater than the exceptions permitted by ORS 133.290.⑥

---

courts have rejected this supervisory suppression rule. State v. Shipley, 232 Or 354, 375 P2d 237 (1962), *cert denied* 374 US 811, 83 S Ct 1701, 10 L Ed 2d 1034 (1963); State v. Sunderland, 4 Or App 1, 468 P2d 900, *aff'd* 476 P2d 563, Sup Ct *review denied* (1970).

⑥ The United States Congress has taken action in this field with the passage of two separate, so-called "no-knock" provisions. See Controlled Substances Act, Pub L No 91-513, 84 Stat 1236; District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub L No 91-358, 84 Stat 473. At least four states have similar legislation. See Rev Stat of Neb § 29-411 (RS Supp 1969); NY Code Crim Proc §§ 175, 178, 179 (McKinney 1964); North Dakota Century Code § 29-29.1-01 (1969); Code of Laws

It was not necessary to reach the constitutional issue in *State v. Mitchell et al,* supra, because under either the universally recognized constitutional or statutory exceptions, exigent circumstances justifying an unannounced search were present in that case. For the reasons that follow, we find it necessary to reach the constitutional issue in this case.

*Ker* held that it was constitutionally permissible to make an unannounced search when it was likely that evidence would otherwise be destroyed. The major battle in the state courts since *Ker* has been over the proper scope of this exception.

■ To better understand the area of disagreement, we first review the areas of agreement. Under the destruction-of-the-evidence exception all courts agree that announcement is not required if, before arriving to search, the police have particular reasons to reasonably believe in a particular case that evidence will be destroyed. Such situations might occur, for example, if a reliable informant advises the police that betting slips are kept on "flash paper," or that a small amount of narcotics is always kept near a toilet. There is further agreement that if the police knock and announce and then hear indications that evidence is being destroyed, they are justified in making an immediate forcible entry. Cf *State v. Spicer,* 3 Or App 120, 473 P2d 147 (1970). Also, if police observe persons within a house in possession of easily disposable amounts of narcotics, or other evidence, announcement is not required. *State v. Mitchell et al,* supra.

---

of South Carolina §§ 17-257, 53-198 (1962). All of these statutes, both federal and state, provide for "no-knock" warrants approved by judicial officers.

The split in authority has arisen in cases where none of these clearly exigent circumstances are present. One group of cases has held that since certain evidence, for example, of gambling and narcotics offenses, is, by its very nature easily destroyed or disposed of, unannounced searches are always constitutionally permissible in these contexts. *People v. DeLago,* 16 NY2d 289, 266 NYS2d 353, 213 NE2d 659 (1965), *cert denied* 383 US 963 (1966); *Henson v. State,* 236 Md 518, 204 A2d 516 (1964). On the other hand, a more substantial body of authority has rejected this blanket rule, and concluded that the police must have a particular reason in each case to make an unannounced search. *State v. Mendoza,* 104 Ariz 395, 454 P2d 140 (1969); *Commonwealth v. Newman, Appellant,* 429 Pa 441, 240 A2d 795 (1968); *State v. Hatcher,* 3 Wash App 441, 475 P2d 802 (1970); *Reynolds v. State,* 238 So2d 557 (Ala Crim App 1970). The leading case for this latter point of view is *People v. Gastelo,* 67 Cal2d 586, 63 Cal Rptr 10, 432 P2d 706 (1967), where it was stated:

"Thus we have excused compliance with the statute in accordance with established common law exceptions to the notice and demand requirements on the basis of the specific facts involved. No such basis exists for nullifying the statute in all narcotics cases, and, by logical extension, in all other cases involving easily disposable evidence * * *.

"Under the Fourth Amendment, a specific showing must always be made to justify any kind of police action tending to disturb the security of the people in their homes. Unannounced forcible entry is in itself a serious disturbance of that security and cannot be justified on a blanket basis. Otherwise the constitutional test of reasonableness would turn only on practical expediency, and the amendment's primary safeguard—the requirement of particularity—would be lost. Just as the police must

have sufficiently particular reason to enter at all, so must they have some particular reason to enter in the manner chosen * * *." 67 Cal2d at 588-89.

The state does not ask that we adopt a total blanket exception for narcotics, and we are persuaded that a total blanket exception would be unwise. The anomalous results that a total blanket rule could produce are well illustrated by the facts of *Commonwealth v. Mc-Closkey,* 217 Pa Super 432, 272 A2d 271 (1970). In that case, police had probable cause to search for five pounds of marihuana in a third-floor college dormitory room, knowing that the room contained no toilet, and knowing there were no means of escape other than the one door they entered. Even though destruction of evidence and escape thus seemed impossible, the police made an unannounced entry. The Pennsylvania court held the search to be illegal, reasoning that if such facts came within an exception to the constitutional requirement of announcement, the exceptions would have totally consumed the rule. We agree with that analysis.

Anticipating the direction of the United States Supreme Court is not a uniformly fruitful exercise. *Compare State v. Brewton,* 247 Or 241, 422 P2d 581, *cert denied* 387 US 943, 87 S Ct 2074, 18 L Ed 2d 1328 (1967) *with Harris v. New York,* 400 US 222, 91 S Ct 643, 28 L Ed 2d 1 (1971). The United States Supreme Court, having stated that there are certain minimum constitutional requirements in the manner of executing a search warrant, has not yet defined them with any precision. It may be that in due course it will approve the *Henson-DeLago* rule, but for the reasons stated in *Commonwealth v. McCloskey,* supra, we cannot reasonably anticipate that the Supreme Court will

condone an exception to a constitutional requirement which, in effect, will "consume" the requirement.

On the other hand, we are not persuaded that the standard adopted by the California court in *Gastelo* is constitutionally required by *Ker v. California,* supra. There is an intermediate position with regard to preventing the destruction of evidence which we believe adequate to meet the requirements of *Ker.* It is: the minimum showing necessary to invoke the destruction-of-the-evidence exception to the constitutional announcement requirement is that (1) before[7] making the search the police have probable cause to believe there to be a small, readily disposable amount of evidence at the premises to be searched, *or do not know the amount,* and (2) reasonably believe there is likelihood that the evidence might be destroyed if announcement is given.

Such minimum showing has not been made in this case. The affidavit in support of the search warrant reveals the police had probable cause to believe they would find "scored pills" in the form of "1,000 'whites', a slang term for benzedrine." Nothing in the record suggests this is an easily disposable amount of narcotics. Also, there is no showing the police were reasonably concerned that the evidence sought would be destroyed. Indeed, at the suppression hearing, Sergeant Miller expressly testified to the contrary.

---

[7] "* * * In determining the lawfulness of the entry * * * the court should concern itself *only with what the officers reasonably believed at the time of their entry * * *.*" (Emphasis supplied.) State v. Steffes, 2 Or App 163, 168-69, 465 P2d 905, 908, Sup Ct *review denied* (1970).

Thus, the inquiry should be addressed to the destructibility of the particular amounts of evidence the police expected to find, not the amount they did find.

■ The state made only one small effort to document Sergeant Miller's possible concern with the disposability of the evidence sought:

"Q * * * have you had experiences in narcotics investigations?

"A Yes.

"Q And in your experience in narcotics investigations do you have an opinion as to whether or not narcotics can be disposed of?

"A Yes."

There are at least two major problems with the record that the state thus established. First, and most obviously, Sergeant Miller was never asked for his opinion. Second, and more importantly, "whether or not narcotics can be disposed of" is far too general. As the state concedes in its brief, small quantities of pills, balloons of heroin, and lids of marihuana are much more easily destroyed than kilo bricks of marihuana. Thus, the question should have been not "whether or not narcotics can be disposed of," but whether the particular amount of narcotics Sergeant Miller had probable cause to search for was readily disposable.

■ Since the required showing to invoke the destruction-of-the-evidence exception was not made, the instant entry without announcement of purpose violated the Fourth Amendment. The fruits of an unconstitutional search are inadmissible under *Mapp v. Ohio*, supra. Defendant's motion to suppress should have been granted.

Reversed and remanded.