Argued October 27, affirmed December 27, 1971, petition for rehearing denied January 26, petition for review allowed March 31, 1972

STATE OF OREGON, *Respondent, v.* SCOTT MARLOW DARROCH (No. 25051), *Appellant.*

STATE OF OREGON, *Respondent, v.* GEOFFREY KEVIN VALENTINE (No. 25048 and No. 25050), *Appellant.*

492 P2d 308

*Joseph P. Morray,* Corvallis, argued the cause for appellants. On the briefs were Colley and Morray, Corvallis.

*Walter L. Barrie,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

Defendants in this consolidated proceeding appeal from convictions for illegal possession and sale of marihuana in hashish form, ORS 474.020. The main issue centers on alleged failure of police to comply

with Oregon's "knock and announce" statute, ORS 133.290,[1] in executing a search warrant.

Defendants also challenge the joinder in their indictments of the charges of possession and sale of hashish, contending this violated ORS 132.560(2), infra. Defendant Valentine, who was also convicted on a separate charge of selling hashish, asserts that the consolidation of that indictment with the two count indictment was error under ORS 132.560(2).

On August 3, 1970, Special Agent Holm of the U. S. Bureau of Narcotic and Dangerous Drugs, acting in an undercover capacity, was introduced to defendant Valentine. Holm told Valentine he wanted to purchase between 15 and 20 pounds of hashish in the near future and about a pound of hashish that day. Valentine assured him he could deliver. He did deliver the smaller amount later the same day. Between then and September 17, Holm, Valentine, and defendant Darroch, who was Valentine's roommate, had several conversations and meetings concerning the arrival of a big shipment of hashish and the sale of the 20 pounds to Holm. On the 17th, Holm phoned the apartment to find out whether the shipment had arrived and was told by Darroch that it had, but defendants had already dealt most of it off, and the most they could supply was five pounds. Holm agreed to purchase that amount. Holm went to the defendants' apartment and. was told by

---

[1] ORS 133.290.

"The officer may break open any outer or inner door or window of a dwelling house, or otherwise, to execute the warrant if, after notice of his authority and purpose, he is refused admittance."

Agent Richardson testified he announced his identity while pushing open the apartment door and failed to state the purpose of his entry.

Valentine to return the next day. While in the apartment he observed quantities of hashish.

On the 18th, based upon an affidavit reciting Holm's account of the above, the Benton County District Attorney obtained a search warrant for the defendants' apartment. Local police, working with Holm and two other federal officers, placed the apartment under surveillance.

As arranged, Holm arrived at the apartment around 12:45 p.m. He knocked and was admitted by Valentine. After Holm confirmed the price for the five pounds of hashish and made arrangements for a future purchase, Darroch left the apartment and returned shortly with a cardboard box containing five one-pound bricks of hashish. Explaining that his money was in his car, Holm left the apartment, purposely leaving the front door slightly ajar. He proceeded to his car, parked some 75 feet away. From a portable radio in the trunk he informed the other two federal agents that defendants had five pounds of hashish in the apartment. These two, followed by local officers (armed with the search warrant) converged on the apartment. Agent Richardson, first to the door, pushed it open while announcing his identity and ordering defendants to place their hands against the wall. The other officers followed and Holm arrived several minutes later. Defendants were arrested and the apartment searched, revealing, among other things, two cardboard boxes of hashish, one containing 2,194 grams, apparently the five pounds offered to Holm, and the other, found under a table in the same room, containing about 730 grams.

The meaning of the word "break" in the context of "knock and announce" statutes includes a factor in addition to mere physical entry—namely,

that the entry be unauthorized or without permission. *Keiningham v. United States,* 109 US App DC 272, 287 F2d 126, 130 (DC Cir 1960) (interpreting federal announcement statute, 18 USC § 3109); *Koptyra v. State,* 172 So2d 628, 631-32 (Fla App 1965) (interpreting Florida announcement statute); see *State v. Gassner,* 6 Or App 452, 455 n 1, 488 P2d 822 (1971). In *State v. Monteith,* 4 Or App 90, 95, 477 P2d 224 (1970), we held that a police officer's use of subterfuge to gain entrance into a dwelling for the purpose of narcotics investigation was permissible and did not constitute a "breaking" under ORS 133.290. If Holm had returned from his car, walked into defendants' apartment, and executed the search warrant, his action would not have violated ORS 133.290; implicit in his departure for the money was an invitation by defendants to return, making his entry permissive. Apparently defendants concede this, but argue any implied invitation to Holm did not extend to the other officers waiting outside the apartment. We cannot agree the invitation should be construed as so limited.

■ By impliedly inviting the return of Holm, who unknown to them was a law enforcement officer, we hold the invitation extended to others working with him who were empowered to act as Holm could if he returned, i.e., execute a valid search warrant. Thus, Richardson entered under defendants' implied invitation and no "breaking" within the meaning of ORS 133.290 occurred.

This interpretation accords with the values inherent in ORS 133.290, which we observed in *Mitchell*[20] to be

" "* * * to preclude violent resistance to un-

[20] State v. Mitchell et al, 6 Or App 378, 487 P2d 1156 (1970).

explained entries and to protect the security of innocent persons who may also be present on premises where an arrest is made * * *, * * *" and furnish "* * * a civility, particularly in an urban society, to lessen the likelihood of injury or conflict between the police and the citizen * * *." *State v. Mitchell et al,* 6 Or App at 383.

Defendants were expecting Holm to return shortly, so a sudden, unannounced entry was less likely to cause a violent confrontation than one following announcement.[8] Moreover, such an entry did not deprive defendants of any momentary interest in privacy they otherwise might have had since they lost that by permitting Holm's presence only moments before and inviting his return. The trial court properly denied suppression.

■ ■ In their second assignment defendants argue the state carved two convictions from essentially one criminal transaction by charging possession of the box containing the 730 grams of hashish in addition to sale of the box containing the five pounds. Possession of the 730 grams was not necessarily involved nor incidental to the sale of the five pounds and, therefore, subject to a separate charge and conviction.[9] *People v. Mateo,* 171 Cal App 2d 850, 341 P2d 768, 772 (1959); *see State v. Clipston,* 3 Or App 313, 473 P2d 682, 689 (1970).

---

[8] We point out that the shortness of time lapse between Holm's departure and Richardson's entry is crucial to our decision.

[9] Defendants argue this is anomalous, for if they had sold all the hashish to Holm only the charge for sale of hashish could have been brought. Indeed, Holm offered to buy all defendants had, but apparently they were holding some back for another customer. Any anomaly is of defendants' own making.

 Anticipating our decision in (2), defendants argue that if the selling and possessing were separate crimes, they could not be part of the "same transaction" and therefore not properly joined in one indictment under ORS 132.560.

ORS 132.560 provides:

"The indictment must charge but one crime, and in one form only, except that:

"* * * * *

"(2) When there are several charges against any person or persons for the same act or transaction * * * the whole may be joined in one indictment in several counts * * *."

 Though independent crimes, the possession and sale of hashish here were "concatenated in time, place and circumstances." *State v. Huennekens,* 245 Or 150, 152, 420 P2d 384, 385 (1966). In addition, both turned on the same legal issue, namely, the validity of the search warrant's execution. Defendants alleged no prejudice by the joinder, and we see none.

The trial to the court of the separate indictment charging Valentine with the August 3 sale of hashish with two other indictments against him also appears to have been proper and in no way prejudicial.[9]

Affirmed.

---

[9] Valentine was charged under indictment No. 25048 with (1) dispensing and (2) sale on August 3, 1970, under No. 25049 (according to defendants' abstract of record) with (1) dispensing and (2) sale on September 17, 1970, and under No. 25050 with (1) possession and (2) sale on September 18, 1970. He was tried separately by the court on all three indictments of two counts each, and found guilty of the August 3 sale and the September 18 possession and sale, and not guilty on the other three counts— one in No. 25048 and two in No. 25049. The assignments of error make no claim of impropriety in that the three indictments were tried together, nor does defendants' abstract show that any objection was made thereto.

FORT, J., dissenting.

ORS 133.290 states:

"The officer may break open any outer or inner door or window of a dwelling house, or otherwise, to execute the warrant if, after notice of his authority and purpose, he is refused admittance."

The court in n 1 points out that Agent Richardson did not comply with it because he "failed to state the purpose of his entry." I do not agree that because defendants voluntarily admitted Agent Holm solely as the result of subterfuge and by implication extended to him personally a right to re-enter with the purchase money, there was also an implied consent to Richardson, in the absence of Holm, to enter in a manner prohibited by the statute. One cannot imply a consent by the lawful occupiers of a dwelling running to a person or to a class of persons whose very existence is unknown to the persons in possession. The majority does not conclude that exigent circumstances were present here. I can find none within the rule of *State v. Steffes,* 2 Or App 163, 465 P2d 905, Sup Ct *review denied* (1970), and *State v. Mitchell,* 6 Or App 378, 487 P2d 1156 (1971) Sup Ct *review denied* (1972). In *State v. Cortman,* 251 Or 566, 446 P2d 681 (1968), *cert denied* 394 US 951 (1969), the Supreme Court said:

"*Where, as here, the court found that the officers made the required announcement,* we believe that the purposes of the statute were served and that it would be unrealistic to require the officers to delay their entry for a fixed period of time *after making their presence and purpose known. * * *"* (Emphasis supplied.) 251 Or at 570.

Since it is conceded that Richardson did not make his purpose known as the statute requires, I can find no basis consistent with the statutory language to

uphold the entry here. Nor do I understand that *State v. Cortman,* supra, absent exigent circumstances, approves entry in the absence of "the required announcement." Neither in my view does the fact that Agent Holm left the door so that "there was light between the frame and the door about the width of an inch" change the situation. Nothing was visible through that tiny aperture. No crime was being committed in the officers' presence.

Since in my view the exigent circumstances necessary to justify entrance by the police without complying with ORS 133.290 were not here present, the motions to suppress evidence seized pursuant to the illegal search should have been allowed.

I therefore respectfully dissent.