Argued March 28, reversed and remanded April 21, 1972

STATE OF OREGON, *Respondent, v.* DALE
NORMAN WETTELAND and OTTO JOSEPH
HAAK (No. C-60759), *Appellants.*

496 P2d 27

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed the brief for appellants.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

SCHWAB, C. J.

More than five pounds of hashish were introduced in defendants' trial for sale of narcotics under former ORS 474.020 (1). On appeal defendants contend the seizure of this evidence was invalid because: (1) the police had no warrant, although they had sufficient information and time to get one; and (2) there

were no exigent circumstances that excused the failure of police officers to knock and announce before entering the house where the hashish was seized.

Officer Fessler, operating undercover, was first in a 25th street residence in Portland on September 16, 1970. He observed about 21 grams of hashish and purchased 10 of them. The officer returned to that residence the next evening and discussed purchasing a much larger quantity of hashish, apparently four to five pounds. At this time he again observed small quantities of hashish in those premises. Neither of the defendants involved in this case were present on those occasions.

Officer Fessler was informed by phone on September 18 that he should again return that evening and the delivery of the larger quantity would be arranged. When he arrived about 11 p.m., he was introduced to the present defendants, and a discussion followed concerning possible locations for the planned sale to occur. Defendant Wetteland then made a phone call, presumably to the person who then had the hashish, and it was decided the sale would take place at the 25th street residence. About 12:25 a.m. on September 19, one Trytko arrived with the hashish. Officer Fessler made an excuse to go outside to his car, signaled other officers, and then went back into the residence. A few minutes later those other officers entered the premises (the details concerning their method of entry are discussed below), arrested all present, including defendants, and seized the hashish.

As defendants correctly point out, based on Fessler's observations on September 16 and 17, the police had sufficient information to get a warrant to search the 25th street residence. However, we do not

fault them for not immediately doing so, since they believed that residence contained only small quantities of narcotics, and since Fessler was negotiating to purchase a far larger amount.

■ Concerning the hashish seized and used as evidence in this case, the state established at the suppression hearing that before Fessler went to the 25th street residence about 11 p.m. on September 18, no location for the planned sale had been agreed upon, and that the officer did not learn the hashish would be brought to that residence until after he arrived. Defendants did not produce any evidence to the contrary. Thus, before the late night hours of September 18, the police never had probable cause to believe the large quantity of narcotics they wished to seize would be in the 25th street premises. Once the location of the planned sale was agreed upon, there was not sufficient time or opportunity to get a warrant. The state sustained its burden of proving the validity of this warrantless seizure.

As noted above, after the hashish was brought to the 25th street residence, arrests and seizure were made by police officers other than Fessler after they had received a signal from him. The only testimony at the suppression hearing concerning the officers' method of entering the premises came from Officer Fessler and defendant Wetteland. Fessler testified that the other officers knocked, said something—but he was not sure what—and entered. Defendant Wetteland testified the officers did not knock or announce, but, instead, kicked the door in. On this record, both parties have assumed there was non-compliance with the knock and announce requirement.

■ As we have previously noted, the general statu-

tory and constitutional rule is that police officers must knock and announce their identity and purpose before entering premises to make an arrest or search, but this general requirement is excused when there are exigent circumstances. *State v. Gassner,* 6 Or App 452, 488 P2d 822 (1971); *State v. Mitchell et al,* 6 Or App 378, 487 P2d 1156 (1971), Sup Ct *review denied* (1972).

The Oregon statutes creating the knock and announce requirement are: ORS 133.290 (when entering to arrest with a warrant); ORS 133.320 (when entering to arrest without a warrant); and ORS 141.110 (when entering to search with a warrant). We note that there appears to be no statutory knock and announce requirement when police enter to search without a warrant, and thus there might be no statutory issue in this case. However, the state's brief characterizes the entry involved in this case as an entry to make a warrantless arrest, stating:

> "* * * [The officers] entered, arrested the occupants, and seized the hashish incident to the arrests. The record does not suggest that the police conducted any further search of the premises * * *."

In any event, we need not here pass on any statutory questions, since we hold the state completely failed to prove any exigent circumstances existed, and therefore the unannounced police entry in this case violated the minimum constitutional standards discussed in *State v. Gassner,* supra.

In the trial court the state's thesis appears to have been that the evidence the police sought in the 25th street premises was readily destructible and this exigent circumstance excused compliance with the knock and announce requirement. As we understand

the undercover agent's testimony, the police expected to seize about five pounds of hashish when they entered those premises. He described the hashish that was seized as consisting of eight blocks about 8½″ x 4¼″ x 1″, each individually wrapped in Saran Wrap. In answer to the trial judge's questions, he stated that if the Saran Wrap had been removed from the blocks, they could then have been crumbled and flushed down a toilet. He did not suggest how long these operations might take. The trial judge then concluded:

> "* * * I would gather it's [the hashish] rather easily disposable. I could see jamming a toilet, you would probably have a flood * * *. It's rather, I would say easily disposed of."

■ As we stated in *Gassner,* the question is not whether the trial judge or anybody else in retrospect considers the evidence to be readily disposable. Rather, the proper question is whether the *entering* officers, *prior* to making an unannounced entry, had probable cause to believe there to be a small, readily disposable amount of evidence at the premises to be searched and reasonably believed there was a likelihood that the evidence might be destroyed if announcement were given. *State v. Gassner,* supra, 488 P2d at 827-28. Since the police officers who made the unannounced entry in this case did not testify at the suppression hearing, there was absolutely no showing as to what, if anything, they believed prior to making their entry.

The state's thesis on appeal is that the knock and announce requirement does not apply to these facts based on *State v. Darroch,* 8 Or App 32, 492 P2d 308 (1971), *aff'd* 96 Adv Sh 73, — Or —, 504 P2d 84 (1972). In that case an undercover agent, Holm, was in a house to accept delivery of narcotics he had pur-

chased.[1] Once the narcotics were brought in and displayed to Holm, he made an excuse to go outside to his car and then signaled other policemen. Unlike Officer Fessler in the case at bar, Holm did not then immediately return to the premises. Instead, the other police officers Holm had signaled, led by Richardson, entered the premises, with Holm following immediately.

Noting that the knock and announce requirement only applies to unauthorized entries, we held in *Darroch* that there was an implied invitation to Holm to return to the premises, and that

"* * * the invitation extended to others working with him who were empowered to act as Holm could if he returned, i.e., execute a valid search warrant. Thus, Richardson entered under defendants' implied invitation and no 'breaking' within the meaning of ORS 133.290 occurred." 492 P2d at 310.

■ *Darroch* is distinguishable from the facts at bar because in that case the officers entered while Holm's return was expected, whereas in this case the officers entered after Fessler had already returned. We believe this difference is decisive in light of the policies underlying the knock and announce requirement. To the extent that requirement is designed to prevent violence, *see, State v. Mitchell,* supra, the unannounced entry in *Darroch* presented little problem since Holm was expected to return, but the unannounced entry in this case was just as likely to cause a violent confrontation as any such entry since defendants were

---

[1] We note that in State v. Darroch, 8 Or App 32, 492 P2d 308 (1971), *aff'd* 96 Adv Sh 73, — Or —, 504 P2d 84 (1972), as contrasted with this case, the police knew in advance that the narcotics that Officer Holm had arranged to purchase would be delivered at a specific location, and properly obtained a search warrant.

not expecting anybody to enter in such a manner. To the extent the knock and announce requirement affords some protection of privacy, *see, State v. Gassner,* supra, we cannot say that the presence of one undercover officer in the premises waived defendants' rights of privacy as to all policemen.

Reversed and remanded.