Argued July 28, affirmed August 10, petition for rehearing denied
August 23, petition for review denied September 26, 1972

STATE OF OREGON, *Respondent, v.*
JAMES E. SMITH (No. C 71 12 3757 Cr.),
*Appellant.*

500 P2d 269

*Darrell E. Bewley,* Portland, argued the cause for appellant. With him on the brief were Francis F. Yunker, and Sherwood, Barnes & O'Dell, Portland.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FORT and THORN-TON, Judges.

SCHWAB, C.J.

Defendant was convicted of illegal possession of heroin and, as an ex-convict, of illegal possession of a firearm. His sole contention on appeal is that the heroin and the firearm seized from his residence pursuant to a search warrant should not have been received in evidence against him because the police did not knock and announce their identity and purpose prior to entry into his residence. We agree with the trial judge that there were exigent circumstances excusing compliance with the knock and announce statute, ORS 133.290.

The search warrant authorized a search of James Smith, his house, the yard behind his house and his automobile for heroin and narcotics paraphernalia. The affidavit in support of the warrant told of information from a reliable informant that Smith kept heroin on his person, in his automobile, and, on occasion, hidden in his yard. It also stated that the informant had witnessed the defendant making sales of heroin in defendant's home.[1]

After the search warrant was issued a detachment of police under the command of a sergeant went to the defendant's house a little after midnight on December 3, 1971, to execute the warrant. As they arrived they noted that there were lights on and people

---

[1] The affidavit recited "[t]hat while in the premises * * * my informant observed sales of heroin being made to other persons by a person known to my informant as James Smith * * *." And, "* * * my informant informed me that the said James Smith on occasion hides narcotics in his yard."

in the house near the upstairs windows. Almost immediately thereafter, the defendant drove up in his automobile. Some of the policemen apprehended the defendant and commenced reading the search warrant to him. At about the same time the remainder of the policemen proceeded to the front of the house, forced the front door without knocking or announcing their purpose, entered the house and searched it. There they found the heroin and the firearm which were the subjects of the motion to suppress.

We do not reach the question of whether or not the defendant, who was already apprehended outside his home, has standing to claim the benefits of the knock and announce rule, because we agree with the trial judge that here, under *State v. Gassner*, 6 Or App 452, 488 P2d 822 (1971), there were exigent circumstances justifying the police entry without knocking and announcing. The sergeant in charge of the police detail testified as follows:

"Q You did not know if there was a certain amount of drugs in the house; is that correct?

"A That's correct.

"* * * * * *

"Q And did you have any reason to believe that anyone would be likely to destroy anything the seconds before you went through that door?

"A Yes, we did.

"Q Why?

"A Well, I was fearful that if we knocked on the door, the people on the second floor would look out—which they oftentimes do in these situations—will look out the window to see who's there or maybe even call down to see who's there. And they could see Mr. Smith and four police officers standing on the side street. And we were fearful at any moment this was going to happen —

"* * * * * *

"A  And for that reason, I was anxious to go through the door as fast as we could. I was afraid that somebody might look out for no reason. And I was afraid Mr. Smith might honk his horn or even yell to someone inside that house.

"And for that reason I was anxious to get in as fast as we could.

"*  *  *  *  *  *

"Q  If he had not been there and you approached to execute the search warrant, would you have knocked and announced?

"A  No, in all probability we wouldn't have, Your Honor.

"Q  Why?

"A  Well, we are always fearful that people in these situations are going to get rid of the narcotics. And particularly in heroin trafficing [sic], it's very easy to flush it or to throw it out a window or to even swallow the material. And we find that usually the only way we can effectively gain the evidence that we need is to enter as rapidly as we can.

"And so, whether he had been outside or inside the house, I feel that I would have told the officers to go through the front door as rapidly as possible.

"Q  Would this be true in any search for narcotics?

"A  Not in any search, Your Honor.

"Q  What searches?

"A  Well, as an example: if I felt the person — say the search warrant was for marijuana, and I knew the person had a quantity of marijuana more bulky than he could dispose of it. In all probability, I would direct the men to knock and announce and enter at a reasonable opportunity to open the door.

"But in the heroin traffic, it's rare that people possess very much heroin as far as quantity is con-

cerned. And it is very easy to dispose of evidence in these heroin situations. And for that reason, we most frequently do go through the doors as rapidly as possible."[2]

In *Gassner,* after discussing the split of authority, we said:

"\* \* \* [T]he minimum showing necessary to invoke the destruction-of-the-evidence exception to the constitutional announcement requirement is that (1) before making the search the police have probable cause to believe there to be a small, readily disposable amount of evidence at the premises to be searched, *or do not know the amount,* and (2) reasonably believe there is likelihood that the evidence might be destroyed if announcement is given." 6 Or App at 464.

There was such a minimum showing in this case.

Affirmed.

FORT, J., dissenting.

The majority here holds the entry into the defendant's home under the circumstances described as justified under the exigent circumstances rule. *State v. Gassner,* 6 Or App 452, 488 P2d 822 (1971). In my opinion the facts here do not warrant the application of that rule.

The affidavit as described in the majority opinion does not say that heroin was in the house, only that it had been observed on the person of the defendant while he was in the house. The defendant was in cus-

---

[2] As the defendant notes in his brief, the testimony of this particular policeman tends to indicate that he has adopted a "blanket exception" to the knock and announce requirement in heroin cases. The "blanket exception for narcotics" doctrine is not the rule in Oregon. *See,* State v. Gassner, 93 Adv Sh 349, 6 Or App 452, 488 P2d 822 (1971). Our holding in this case is based solely on the testimony describing exigent circumstances.

tody outside the house at the time of entry, beside his automobile. He obviously was in no position to dispose of anything in the house.

Furthermore, there is no contention that anyone else engaged with the defendant in the heroin trade was present or reasonably believed to be present in the house. The defendant had given no signal and had made no attempt to do so at the time of entry and had had no prior occasion to apprehend the need to do so.

Accordingly, it does not appear to me that there is anything more than pure conjecture from the evidence set forth in the opinion to "reasonably believe there is likelihood that the evidence might be destroyed if announcement is given." *State v. Gassner,* supra. 6 Or App at 464. The majority correctly points out that the "blanket exception for narcotics" doctrine is not the rule in Oregon. It is difficult to see in what substantial respect it is not now the rule, under the majority decision.

Inherent in the opinion is the assumption that any person present in the home of a drug trafficker is himself for that reason alone not entitled to the protection of ORS 133.290.

Under this decision there is then protection neither for the police nor for law-abiding persons present in another's home.

For the foregoing reasons I respectfully dissent.